**Carol MAJESKE, Julie P. Johnson, Carol Zancha, Marie Jacobson, Nancy Bringe and John Gargul, Plaintiffs,**

v.

**CITY OF CHICAGO, Leroy Martin, Charles Ford, Edward Brooks, Hubert Holton, Jr., and Glenn Carr, Defendants.**

No. 89 C 7262.

United States District Court,
N.D. Illinois, E.D.

June 27, 1990.

Kimberly A. Sutherland, Chicago, Ill., for plaintiffs.

Jay M. Kertez, Sarah Vanderwicken, Kelly R. Welsh, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Defendants, City of Chicago, Leroy Martin, Charles Ford, Edward Brooks, Hubert Holton, Jr., and Glenn Carr, have moved to dismiss the two-count complaint of plaintiffs, Carol Majeske, Julie P. Johnson, Carol Zancha, Marie Jacobson, Nancy Bringe, and John Gargul. Plaintiffs have moved for class certification. The court now rules on both of these motions.

The motion to dismiss the complaint will be considered first. Although the complaint is not as clear as it ought to be on this point, it appears to allege claims under Section 1981; Section 1983 based on violations of due process and equal protection; and under Illinois law for violations of the Chicago Municipal Code and the Personnel Rules promulgated thereunder and for breach of contract. See 42 U.S.C.A. §§ 1981, 1983 (West 1981); U.S. Const. Amend. XIV.

Plaintiffs are white Chicago police officers who sat for the 1989 detectives' promotional exam. They allege various improper treatment of themselves in connection with that exam, primarily because of a scoring system that favored black and hispanic test takers over white test takers.

■ Although it is difficult to discern a Section 1981 claim in the complaint, the parties have proceeded on the assumption that one is present. 42 U.S.C.A. § 1981 (West 1981). The court will address this subject first.

Section 1981 provides in part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens....

42 U.S.C.A. § 1981 (West 1981). An interesting feature of the statute in the context of this case is that it guarantees "the same right ... as is enjoyed by white citizens." 42 U.S.C.A. § 1981 (West 1981). This, however, does not preclude relief because the Supreme Court has held that Section 1981 prohibits racial discrimination against white persons. *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

The Supreme Court recently said:

[T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981. In making this determination, a lower court should give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

*Patterson v. McLean Credit Union,* —— U.S. ——, ——, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132, 155 (1989). Plaintiffs have alleged no facts in their complaint from which it could be concluded that a promotion to detective in the Chicago Police Department "rises to the level of an opportunity for a new and distinct relation between the employee and the employer" and so have not alleged "a claim actionable under § 1981." *Patterson v. McLean Credit Union,* —— U.S. ——, ——, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132, 155 (1989). The Section 1981 claim in plaintiffs' complaint will therefore be dismissed.

■ With respect to plaintiffs' due process claims, defendants contend that plaintiffs have not alleged a protectible property interest and so have not alleged a violation of due process. Plaintiffs in their responsive memorandum have identified the following as their protectible property interests:

Plaintiffs allege that they have a property interest in the established, non-discretionary criteria for promotions, set forth in the municipal code and personnel rules: the right to be ranked on the basis of their acutal [sic] scores on the basis of excellence. The CITY has no discretion to create racially adjusted "percentile" scores, nor to rank candidates in any order it chooses on an eligibility list, *U.S. v. City of Chicago,* 853 F.2d 572 at 576 (7th Cir.1988).

Further, plaintiffs have a property right in having a record made of all parts of the examination. The CITY's customary way, and the only practical way, to record an oral board is to make an audio-video tape.

Plaintiffs cite no authority, including the case cited above, for the proposition that the items noted are property interests protectible under the due process clause.

Moreover, plaintiffs do not address a recent Seventh Circuit opinion, cited in the memorandum in support of defendants' motion to dismiss, in which that court stated:

Turning to the merits, the City contends, based on *Bigby v. City of Chicago,* 766 F.2d 1053 (7th Cir.1985), that [intervening appellee Thomas W.] Earth has no protectible interest in his rank on the 1979 [Chicago Police Department sergeant's eligibility] roster. In *Bigby,* a group of black police sergeants brought suit against the City under Title VII alleging that the City had discriminated against them by refusing to promote them to lieutenant, because they failed to achieve a qualifying score on the lieutenant's examination which they contended was racially biased. A group of white and hispanic police sergeants sought and were allowed to intervene in the suit on the ground that it was not "job-related" and therefore violated the intervenors' rights under the Due Process Clause of

the Fourteenth Amendment. The district court after argument agreed that the exam was discriminatory and ordered the immediate promotion of eleven black sergeants to lieutenant. However, the court refused to order promotion of the intervenors because, though the examination was invalid under Title VII, it was not arbitrary or capricious and so did not warrant relief under the Fourteenth Amendment. The intervenors appealed. We held that the intervening sergeants had neither a property nor liberty interest in a fair promotional exam or in "the rank, which they have not yet attained, of lieutenant." *Id.* at 1056. One passage in *Bigby* is particularly instructive here:

> "[T]he promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for that choice. *See* Ill.Rev.Stat. 1981, ch. 24, ¶ 10–1–13; Chicago Municipal Code ¶ 25.1–5(5). Construing the counterpart provision in the statute governing the police forces of smaller municipalities, *McCoy v. Board of Fire and Police Comm'rs*, 79 Ill.App.3d 742, 744, 35 Ill.Dec. 70, 72, 398 N.E.2d 1020, 1022 (1979), holds that 'the promotion of a patrolman to sergeant is one of discretion,' so that the plaintiff 'had no vested right to promotion.' The same is true of promotion from sergeant to lieutenant. Indeed it is more strongly true, since discretionary factors loom larger as one moves up on a hierarchy. Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. 'To have a property interest ... a person ... must have more than a unilateral expectation of it. He must instead have a legitimate *claim of entitlement* to it.' [citation omitted]"

*Bigby*, 766 F.2d at 1057.

As we explained in *Bigby*, Illinois law does not create an entitlement to promotion, because Ill.Rev.Stat.1981, ch. 24, ¶ 10–1–13 and Chicago Municipal Code § 25.1–5 give the promoting authorities unfettered discretion to choose from among the five highest rated applicants for each available promotion. *See also Miller v. Henman*, 804 F.2d 421 (7th Cir.1986) (when there are no binding substantive criteria, when a decision cannot be "wrong," there is no constitutionally protected property interest.) Thus, even assuming that Earth was the 56th highest ranking white male, it would be proper for the City to promote any one of the four officers other than Earth who were recommended for promotion.

... [N]othing in the applicable statute or rule creates this alleged right to a particular roster ranking sufficient to constitute a "property" interest in the constitutional sense. As roster rankings are based, in part, on subjective, discretionary performance ratings, and a candidate for promotion has no legal "right" to a favorable performance rating from his superiors (*Bigby*, 766 F.2d at 1056), roster rankings are dependent upon the superior's perception of a candidate's performance at a given time and are at best uncertain. Because an officer cannot be assured that he will achieve a particular ranking on a given promotional roster, we fail to understand how he can assert that a particular ranking is "securely and durably" his under state law. *See Yatvin v. Madison Metro. School Dist.*, 840 F.2d 412, 417 (7th Cir. 1988).... Neither does an entitlement attach to a particular roster position by virtue of publication of the roster. Earth has neither identified nor cited any statute, rule or regulation that might be properly construed as creating a binding right to or property interest in a roster position, or as a promise that the City will not revise ranks after publication.

.    .    .    .    .

... [T]he message from *Bigby* and under Illinois law is clear: a roster ranking may create an expectation of promotion, but an officer has no entitlement to a particular roster position or to promotion. Neither Illinois law nor the Chicago Municipal Code entitle Earth to the challenged promotion much less to re-

main as the 56th highest ranking white male. We hold that appellant Earth was not deprived of a property interest when Gandurski was selected for promotion. *United States v. City of Chicago,* 869 F.2d 1033, 1036–38 (7th Cir.1989). This passage, quoted at length because of its obvious relevance to the issue before this court, shows that, under *prior decisions of the* Seventh Circuit, plaintiffs have not alleged a property interest protectible under the due process clause of the Fourteenth Amendment. The due process claims in plaintiffs' complaint will therefore be dismissed.

■ Defendants argue that plaintiffs' equal protection claims should be dismissed because plaintiffs have failed to allege facts sufficient to show that they have standing to raise this issue. Specifically, defendants contend that the allegations are insufficient to show that plaintiffs were injured by the alleged wrongful acts of defendants in that they do not allege that plaintiff Gargul (who took the oral portion of the test) would not have been among the first promoted from the list and do not allege that the remaining plaintiffs would have been among the 619 officers advancing to the oral portion of the test if defendants had not performed the acts allegedly violative of plaintiffs' right to equal protection. It is not possible to say that Gargul's ranking on the eligibility list compiled based on the results of the examination in question will be so high as to have no promotional significance; nor is it possible to say that the other plaintiffs' rankings on the eligibility list will be so low as to have no promotional significance. The equal protection claims of the complaint will not be dismissed on the ground that plaintiffs lack standing.

In Count II, plaintiffs allege state law claims against defendant City of Chicago for failure "to follow its own laws, ordinances and Personnel Rules promulgated pursuant to the ordinances, contained in Exhibit A and B hereto" and for breach of a contract allegedly created by those ordinances and Personnel Rules. The City con-

tends that both of these claims in Count II should be dismissed.

■ With respect to the claim that the City failed to follow its own ordinances and Personnel Rules, the City's contention is not that no such cause of action could exist but rather that in this case the discretion lodged in the City was sufficiently great to permit it to act as alleged in the complaint.

The sections of the Chicago Municipal Code upon which plaintiffs rely in their complaint provide:

25.1–5. ... The [personnel] rules shall provide:

.    .    .    .    .

(4) For the establishment of eligible lists for appointment and promotion In Career Service, upon which lists shall be placed the names of successful candidates in order of their relative excellence in the respective examinations....

.    .    .    .    .

(6) For promotions which shall give appropriate considerations to the applicant's qualifications, record of performance and ability.

.    .    .    .    .

25.1–8. No person shall discriminate against any employee or applicant for employment because of race, creed, color, sex or national origin.

Chicago Municipal Code §§ 25.1–5(4), 25.1–5(6), 25.1–8. The Personnel Rules on which plaintiffs rely in their complaint provide:

### RULE V—EQUAL EMPLOYMENT OPPORTUNITY

The Commissioner of Personnel shall be responsible for maintaining a program of equal employment opportunity. This shall include:

.    .    .    .    .

2. Maintenance of records required by Equal Employment Opportunity Commission and other agencies.

3. Development and implementation of programs within the Department of Personnel to provide equality of opportunity for employment in City govern-

ment without respect to race, color, religion, sex, national origin, age or handicapped status.

.    .    .    .    .

## RULE VI—EXAMINATIONS

.    .    .    .    .

*Section 3—Promotional Examinations*

Promotional examinations shall be open to employees in the Career Service who have Career Service status in the class or classes determined by the Commissioner of Personnel as eligible for promotion.

A promotional examination may comprise any or all of the following job-related parts as determined by the Commissioner of Personnel:

(a) Evaluation of training and experience

(b) Written, oral, performance, or other tests of fitness

(c) Evaluation of performance and/or promotional potential based on past performance

(d) Medical or physical fitness tests

(e) Seniority in the class or classes from which promotion is sought.

Such examinations may be assembled (held at one time) or may be held on an open and continuous basis.

*Section 4—Weighting and Rating of Tests and Examinations*

The Commissioner of Personnel shall establish the weighting for the various parts of examinations based on job-related factors as determined by analysis of duties and requirements for the position.

Appropriate techniques and procedures based on merit principles shall be used in determining the weighting of separate tests in an examination, in evaluating the results of examinations, and in determining the relative ratings or rankings of the competitors. The determination of appropriate written, oral and performance tests, of methods of evaluating experience and training, and of weights to be assigned to various parts of an examination, shall be made by the Commissioner of Personnel.

The Commissioner of Personnel shall establish the minimum requirements or passing score for all examinations and parts thereof. The passing score on an examination may be based on a statistical analysis of the distribution of scores on the examination, the requirements of the position involved, the number of positions to be filled within a reasonable period of time, and other appropriate factors.

.    .    .    .    .

*Section 10—Notification of Examination Results*

All candidates shall be notified in writing of their examination results.

Upon written application to the Commissioner of Personnel any candidate shall be permitted to inspect his or her own examination papers and record at the office of the Department of Personnel during regular business hours. Such inspection may be made during the life of the employment list and shall be handled in such a manner as to protect the interest of the candidate and the security of the examination materials. Any correction or change made by the Commissioner of Personnel on the basis of such inspection or other review of examination ratings shall not invalidate any appointment previously made from such a list.

This court is of the opinion that the Illinois Supreme Court would require the City of Chicago to comply with those of the foregoing provisions of the Chicago Municipal Code and the Personnel Rules that are by their terms mandatory. The violation of these provisions has been sufficiently alleged in plaintiffs' complaint for the complaint's claim as to the City's failure to follow its ordinances and rules to withstand defendants' motion to dismiss.

◼ According to plaintiffs, the contract claim is based on the Illinois Supreme Court's case of *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 106 Ill. Dec. 8, 505 N.E.2d 314 (1987). In *Duldulao* the court held:

[T]hat an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are

present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed.

*Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). The complaint alleged:

> 28. Plaintiffs allege further that the ordinances and Personnel Rules contained in Exhibits A and B hereto created a contractual obligation by the CITY toward plaintiffs.
>
> 29. By the conduct described in the aforegoing paragraphs, ... the CITY has wilfully failed to follow its own laws and rules and additionally wilfully breached its contractual duties toward plaintiffs.

The complaint does not allege the presence of the "traditional requirements for contract formation." *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). In particular, the complaint fails to allege that the ordinances and rules were "disseminated to the employee in such a manner that the employee [was] aware of its contents and reasonably believe[d] it to be an offer" and that "the employee ... accept[ed] the offer by commencing or continuing to work after learning of the policy statement." *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). The breach-of-contract claim of Count II of the complaint will therefore be dismissed.

■ Defendants argue that all of the individual defendants should be dismissed from this action for various reasons. Defendants first contend that the complaint does not allege any conduct of the individual defendants. The complaint alleges:

> 8. The afore-named defendants will be collectively referred to as "the CITY" in the following paragraphs, and plaintiffs allege that all actions in the administration of the 1989 detectives' test described in this complaint are attributable to all the individual defendants and they are being sued both in their official capacities and as individuals.

Although defendants are technically incorrect in asserting that the complaint does not allege any conduct by the individual defendants, their contention has merit in that it is impossible to determine from the complaint as pled which defendant did which acts and against which defendants plaintiffs seek particular forms of relief. Accordingly, defendants' request that the individual defendants be dismissed will be granted.

It is unnecessary to decide the merits of defendants' contentions with respect to dismissing the individual defendants on qualified immunity grounds and that the claims against them in their official capacities should be dismissed as being in reality a suit against the City. The court would only suggest that plaintiffs, should they attempt to amend their complaint, consider defendants' arguments on these points in framing their allegations.

Defendants have also requested that this court strike material contained in paragraph 23 of the complaint about the 1988 lieutenant's examination. The court agrees that the material about that examination is immaterial and will order it stricken. FRCP 12(f).

The motion for class certification will now be considered. Plaintiffs have moved for class certification contending that all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied and that this case is maintainable as a class action under any of the alternative provisions of Rule 23(b). FRCP 23(a), (b).

In order to determine whether class action treatment is appropriate, it is necessary first to consider what the class would be. Plaintiffs have proposed the following class:

All Chicago police officers who took the 1989 detectives' test, who were eliminated from contention or whose ranking was lowered on the list of eligibles by one or both of the following acts on the part of the defendants:

a. requiring whites to acheive [sic] a higher raw score than minorities on the multiple choice portion in order to take the oral board;

b. basing final rankings on racially altered multiple choice scores and racially altered, unrecorded oral boards.

It is in the context of this proposed class that class certification will be discussed.

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FRCP 23(a). Rule 23(b) provides in part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...

FRCP 23(b)(2). Defendant has not argued that the numerosity (FRCP 23(a)(1)), commonality (FRCP 23(a)(2)), or typicality (FRCP 23(a)(3)) requirements are not met in this case, or that Rule 23(b)(2)'s additional requirement is not met. FRCP 23(a)(1)–(3), 23(b)(2). The court finds that these requirements have been met. It will therefore be unnecessary to determine the applicability of Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(3).

Defendant does contend that the class should not be certified for two reasons. First, defendant contends that the class should not be certified because none of the prospective class representatives have standing to sue. The question of the standing of the individual plaintiffs, who are also the prospective class representatives, was considered in connection with the motion to dismiss the complaint. The court concluded that plaintiffs do have standing, so this ground for objection to certification of the class is without merit.

■ Second, defendant contends that the prospective class representatives cannot adequately represent the class. Defendant argues:

It is unclear from plaintiffs' motion for class certification whether the proposed class included blacks and Hispanics, as well as whites. If minorities are included, the class is fraught with serious conflict of interest and antagonism.

It is clear that the interests of the white candidates and the black and Hispanic candidates clash.

Defendant makes a good point. Therefore, plaintiffs will be ordered to clarify the definition of the class. If it is clarified to include only white police officers, then defendant's objection on this ground will no longer be valid. If the class is to include black or hispanic officers, it will be necessary to define each of the three groups as a separate subclass because of the antagonism problem identified by defendant. See FRCP 23(c)(4)(B).

There may also be a conflict between the interests of the officers who advanced to the oral portion of the examination and those who did not; e.g., the former group might find it advantageous to argue for some uses of the oral portion of the examination while the latter group might find it advantageous to continue to press for no use of the oral portion of the examination. There should be separate subclasses for these two groups.

Finally, the court finds the submitted material with respect to the adequacy of the representation the class would receive from counsel for plaintiffs to be insufficient. Counsel for plaintiffs will be ordered to submit a detailed affidavit regarding her qualifications to adequately represent the class.

ORDERED: Defendants' motion to dismiss the complaint is granted in part and denied in part. The Section 1981 and due process claims of Count I and the breach-of-contract claim of Count II are dismissed. The equal protection claim of Count I and the failure-to-follow-ordinances-and-rules claim of Count II are not dismissed. The individual defendants—Leroy Martin, Charles Ford, Edward Brooks, Hubert Holton, Jr., and Glenn Carr—are dismissed. The material in paragraph 23 of the complaint about the 1988 lieutenant's examination is ordered stricken as immaterial.

Plaintiffs' motion for class certification is continued pending written clarification by plaintiffs of the definition of the class; written suggestion by plaintiffs of appropriate subclasses; and submission by plaintiffs' counsel of a detailed affidavit regarding her qualifications to adequately represent the class. If these materials are not filed by August 1, 1990, plaintiffs' motion for class certification will be denied.