**Ivan VON ZUCKERSTEIN, Devabhaktuni Ramaswami, Poling Chang, Executrix of the Estate of Han Chang, Dr. Mohan Jain, and Josip Vresk, Plaintiffs,**

v.

**ARGONNE NATIONAL LABORATORY, Defendant.**

**No. 86 C 6304.**

United States District Court,
N.D. Illinois, E.D.

March 26, 1991.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Nearly five years ago, plaintiffs Ivan Von Zuckerstein ("Von Zuckerstein"), Devabhaktuni Ramaswami ("Ramaswami"), Han Chang ("Han Chang"), Mohan Jain ("Jain"), and Josip Vresk ("Vresk") filed this action against defendant Argonne National Laboratory ("Argonne"), their former (or, in the case of Vresk, present) employer, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988) ("Title VII"), and 42 U.S.C. § 1981 (1988) ("section 1981"). With trial two months away, Argonne filed the motions now before this court, seeking to dismiss the section 1981 claim against all plaintiffs and moving separately for summary judgment against plaintiff Poling Chang ("Poling Chang"), executrix of the estate of the now deceased Han Chang. For the following reasons, the motion for summary judgment is denied, and the motion to dismiss is granted in part and denied in part.

## DISCUSSION

I. *Motion to Dismiss Section 1981 Claim*

   A. *Nature of Alleged Discrimination: Race vs. National Origin*

Section 1981, which draws from the Civil Rights Act of 1866 and the Voting Rights Act of 1970, "prohibits racial discrimination in the making and enforcement of private" as well as public contracts. *Runyon v. McCrary,* 427 U.S. 160, 168 & n. 8, 96 S.Ct. 2586, 2593 & n. 8, 49 L.Ed.2d 415 (1976).[1]

---

**1.** Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contract, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1988).

In *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), the Supreme Court, after examining the legislative history of section 1981 and the nineteenth century understanding of the term "race," concluded that Congress intended, through section 1981's proscription of racial discrimination, "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." 481 U.S. at 613, 107 S.Ct. at 2028. While establishing this expansive definition of racial discrimination, however, the Court also noted that certain claims—those based "solely on the place or nation of [the plaintiff's] origin, or his religion," *id.*, are not actionable under section 1981. Relying on this latter language, Argonne asserts that plaintiffs' section 1981 claims should all be dismissed because the discrimination alleged in the complaint is based on plaintiffs' national origin. We disagree.

We begin with an analysis of plaintiffs' third amended complaint. Two paragraphs complain generally of discrimination on the basis of "national origin, race and color" (Complaint ¶¶ 1, 8). Paragraph 3 characterizes each of the five plaintiffs as "immigrants from non-English speaking countries" and identifies them individually:

> Plaintiff Von Zuckerstein is of Central European Jewish origin. Plaintiffs Ramaswami and Jain are of East Indian origin and non-white complexion. Plaintiff Chang is an Asian of Chinese origin and non-white complexion. Plaintiff Vresk is of Yugoslav origin.

Argonne discriminated against Ramaswami, Jain, and Chang, the complaint asserts at paragraph 12, "on the basis of national origin, race and color" and against Von Zuckerstein and Vresk "on the basis of their national origin." In paragraph 9, the complaint describes in general terms the manifestations of Argonne's discrimination; the subparagraphs are couched in terms of discrimination against "immigrants" in favor of "native born Americans." The complaint proceeds in paragraph 10 to enumerate the specific discriminatory conduct that has injured the individual plaintiffs, assert-

ing in some of the subparagraphs that "native born employees" were treated more favorably. The repeated reference to discrimination against employees "who immigrated to the United States from non-English speaking countries" in favor of "native born Americans," Argonne argues, demonstrates that the "heart and soul" of plaintiffs' case is discrimination on the basis of national origin.

■ Argonne's argument with respect to Chang, Jain, and Ramaswami is clearly untenable. Quoting paragraph 8 of the complaint, Argonne observes in its memorandum, underscoring for emphasis, that the plaintiffs allege discrimination against its employees who immigrated to the United States from non-English speaking countries. But the cited paragraph goes on to observe that this discrimination is based on the foreign-born employee's "national origin, *race and color.*" (Emphasis added). Paragraph 12, moreover, explicitly asserts that Argonne discriminated against Chang, Jain, and Ramaswami "on the basis of national origin, race and color." These express allegations of racial discrimination are sufficient to defeat Argonne's motion to dismiss. *See Sajous v. First National Bank,* No. 87 C 3564, 1987 WL 28403 (N.D. Ill. Dec. 21, 1987) (section 1981 claim not dismissed where plaintiff alleged discrimination based on his race and his national origin); *Adames v. Mitsubishi Bank, Ltd.,* 751 F.Supp. 1548, 1560 (E.D.N.Y.1990) (plaintiff "clearly stated an actionable claim under section 1981" by "alleging racial as well as national origin discrimination").

That the complaint refers in several paragraphs to discrimination against immigrants in favor of native-born Americans is of no moment. Despite the clear theoretical distinction between discrimination based on national origin and discrimination based on ancestry or ethnic characteristics (the former is actionable under section 1981, the latter is not), in practice, the line between these two concepts "is not a bright one." *Saint Francis,* 481 U.S. at 614, 107 S.Ct. at 2028 (Brennan, J., concurring); *Korpai v. A.W. Zengeler's Grande*

*Cleaners,* No. 85 C 9130, 1987 WL 20428 (N.D.Ill. Nov. 24, 1987). To the extent that it is clear from the complaint that a plaintiff "is not only alleging discrimination on the basis of [his] place of origin without regard for [his] ethnic background," *Cuello–Suarez v. Autoridad de Energia Electrica,* 737 F.Supp. 1243, 1248 (D.P.R.1990), the claim is cognizable under section 1981. Paragraphs 1, 3, and 12 all suggest a racial animus behind Argonne's discrimination against Chang, Jain, and Ramaswami, and paragraph 8 makes clear that the term "discrimination against immigrants" incorporates discrimination on the basis of race and color as well as national origin. In light of these references to race and ethnicity, it is apparent that the allegations of discrimination in those paragraphs that do not explicitly mention race or ethnicity were made with regard for the ethnic backgrounds of the plaintiffs. It is improper for this court, moreover, on motion to dismiss, to sift through the various allegations of the complaint to determine the true "heart and soul" of the plaintiffs' case; we must construe the allegations and reasonable inferences that can be drawn from them in the light most favorable to the plaintiff. *See Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

Von Zuckerstein's section 1981 claim stands on slightly wobblier legs. In paragraph 12 of the complaint, after alleging that Argonne discriminated against Ramaswami, Chang, and Jain on the basis of national origin, race, and color, plaintiffs assert that the discrimination against Von Zuckerstein was based only on national origin. Von Zuckerstein is entitled to proceed under a section 1981 theory, however, so long as "an allegation of racial animus [is] explicit *or reasonably inferable* from the pleadings." *Anooya v. Hilton Hotels Corp.,* 733 F.2d 48, 50 (7th Cir.1984) (emphasis added); *see also Cuello–Suarez,* 737 F.Supp. at 1247–48 (allegation of racial discrimination inferred even though plaintiff claimed in her pleadings that "she had been discriminated against because of the fact that she was a *'Dominican national'* and *'on the basis of her place of birth'* ") (emphases in original). In paragraph 3, Von

Zuckerstein characterizes himself as "of Central European Jewish origin"; this representation suggests that he identifies himself for the purpose of this lawsuit by his ethnic rather than national heritage. The references to discrimination based on his immigrant status or nationality, then, cannot be said to have been made without regard for his ethnic background. The juxtaposition in paragraph 12 of the basis of the discrimination against Von Zuckerstein (national heritage) with the basis of the discrimination against Chang, Jain, and Ramaswami (national origin, race, and color) might appear to create a negative implication that racial concerns did not motivate Argonne in discriminating against Von Zuckerstein, but we find it significant that the complaint was filed not long after *Saint Francis,* which broadened the purview of "race" to include "ethnicity," was decided. Before *Saint Francis,* the ethnic group in which Von Zuckerstein claims membership may not have been considered a separate "race," *see Budinsky v. Corning Glass Works,* 425 F.Supp. 786, 788 (W.D.Pa.1977), and therefore "racial discrimination" would have been a misnomer when applied to Von Zuckerstein.

■ Argonne's argument is strongest with respect to Vresk, who, like Von Zuckerstein, alleges discrimination in paragraph 12 only on the basis of national origin but who identifies himself in paragraph 3 as "of Yugoslav origin." Characterization as a Yugoslav inherently emphasizes nationality over ethnicity, for the concept of Yugoslavia is a political one; as recent events have illustrated, Yugoslavia is not coextensive with any ethnicity but rather comprises a multitude of them (Serb, Croat, Bosnian Moslem, Slovene, Macedonian, and Albanian). There is simply no such thing as an ethnic Yugoslav. That Vresk's four co-plaintiffs have validly stated claims based at least in part on racial discrimination, however, permits an inference that Vresk, too, is complaining of an ethnicity-based animus and certainly puts Argonne on notice of a claim of racial discrimination. Moreover, the four others will shortly be going to trial on this case, including the

section 1981 claims, and we see no point in making a precise distinction with respect to this plaintiff now, on the eve of trial. Each plaintiff, of course, will have to prove at that time that the discrimination against him was based on his ethnicity and not on his nationality, and to the extent Vresk—or any plaintiff—fails to make such a showing, that deficiency can be addressed at the end of plaintiffs' case.

B. Timing of Discrimination: During the Making and Enforcing of a Contract?

Citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), Argonne urges this court to dismiss plaintiffs' section 1981 claim, which Argonne maintains relates neither to the making or enforcing of a contract. Although the *Patterson* Court reaffirmed the proposition established in *Runyon v. McCrary* that racial discrimination involving private, as well as public, contracts is actionable under section 1981, it simultaneously cut back on the scope of cognizable claims, holding that section 1981 "does not extend ... to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." 109 S.Ct. at 2373.

1. *Harassment and Miscellaneous Post-formation Conduct*

The discrimination complained of in *Patterson* included racial harassment by a supervisor during the plaintiff's employment, failure to offer training for higher level jobs, and denial of wage increases, all of which the Court held to be "postformation conduct" and therefore not actionable, however reprehensible. 109 S.Ct. at 2374. In light of this unambiguous precedent, plaintiffs readily admit that their allegations of harassment and other miscellaneous postformation conduct cannot form the basis of a section 1981 claim. Based on plaintiffs' reference to Argonne's initial memorandum and our own understanding of the complaint, we interpret this concession to encompass plaintiffs' allegations of harassment,[2] denials of pay raises and comparable compensation,[3] improper use of grant monies,[4] and denials of access and exposure.[5] Accordingly, Argonne's motion to dismiss these allegations is granted.

2. *Failure to Promote*

With respect to the *Patterson* petitioner's additional allegation that her employer violated section 1981 by failing to promote her, the Court was more receptive. Failure-to-promote claims may be cognizable under section 1981, the Court held, if "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." 109 S.Ct. at 2377. Charging the plaintiffs with failing to allege that the promotion constitutes "a new and distinct relation," and further arguing that "mere promotion to a higher level position is not a 'new and

---

2. Dismissed from the complaint on the grounds that they allege merely harassment are ¶¶ 9(g) ("[i]mmigrants are given humiliating assignments and/or are told that immigrants are either not wanted or are not suitable for supervisory positions"); 9(h) ("[t]he performance appraisals of immigrants are downgraded"); and parts of ¶¶ 10(a) (Von Zuckerstein was "denied recognition for his work results, given humiliating assignments ... [and] received false and damaging performance appraisals"); 10(b) (Ramaswami was "denied recognition for his work results and professional awards and distinction"); 10(c) (Jain was "given mediocre reviews when his performance was excellent, ... [and] blamed for the errors of others"); 10(d) (Chang was "victimized by a racial slur").

3. Allegations of denials of pay raises are contained in ¶¶ 10(a), 10(b), 10(c), and 10(e). Para-

graphs 10(b), 10(c), and 10(e) also assert denials of comparable compensation. Although "denial of comparable compensation" could be construed as discrimination at the formation of the contract, an actionable claim, Argonne, in its memorandum, describes it as post-formation conduct, and plaintiffs concede this characterization (Plaintiffs' Response at 14).

4. *See* ¶¶ 9(e); 10(a); 10(d).

5. Nonactionable allegations of this kind are contained in ¶ 10(a) (Von Zuckerstein was "denied access to important meetings and to program information" and "denied exposure"). This category does not include, however, the allegations in ¶ 10(a) that Von Zuckerstein was "denied access into higher classified jobs" or "denied access to the defendant's grievance procedure."

distinct' relationship," Argonne asserts that plaintiffs' failure-to-promote allegations must be dismissed.

Whether the position to which a plaintiff might have been promoted would have created a new and distinct relationship between the plaintiff and his employer is a question of fact, *see Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311–12 (7th Cir.1989); *Cousins v. American President Lines, Ltd.*, No. 90 C 1145, 1990 WL 70324 (N.D. Ill. May 16, 1990), and a thorny one at that. *See McKnight v. General Motors Corp.*, 908 F.2d 104, 109 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991) ("[p]recisely how different the new employment relation must be to make a racially motivated refusal to create it actionable under section 1981 is not susceptible of a blanket answer"). We need not delve into that thicket, however, for Argonne has presented the issue on motion to dismiss.

Allegations of discriminatory failure to promote appear in several allegations in the complaint.[6] In some paragraphs, plaintiffs refer simply to denials of promotions to "higher ranking positions," *see* ¶¶ 9(b); 10(a); 10(b); *cf.* ¶¶ 10(d); 10(e), while others explicitly assert that Argonne discriminatorily failed to promote the plaintiffs' to supervisory or management positions. *See* ¶¶ 9(a); 9(c); 10(a); 10(b). These allegations are sufficient to state a failure-to-promote claim under section 1981. *See Cousins*, No. 90 C 1145; *Russell v. District of Columbia*, 747 F.Supp. 72, 75–76 (D.D.C. 1990). Plaintiffs' complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); the supervisory and management positions that plaintiffs allege were foreclosed to them certainly could constitute new and distinct relations. *See Cousins*, No. 90 C 1145 (citing *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908 (4th Cir.1989)). We do not understand *Patterson* to impose upon plaintiffs any duty to incorporate specific language in their complaints nor to impart any magical significance on the phrase (as opposed to the concept) "new and distinct relation."[7]

### 3. *Failure to Consider for New Positions*

Plaintiffs Von Zuckerstein, Ramaswami, Jain, and Chang all allege that Argonne laid them off and then failed to consider them for new positions for which they claim they were eligible. Although discriminatory discharge is not actionable in this Circuit under section 1981, *see McKnight*, 908 F.2d at 108–09, and therefore plaintiff's allegations that they were laid off must be dismissed for section 1981 purposes,[8] we find the failure-to-rehire alle-

---

6. Some of the allegations in the complaint, such as ¶ 9(c)'s assertion that "[i]mmigrants are discriminatorily barred from almost all top supervisory and management positions" and ¶ 10(b)'s claim that "Dr. Ramaswami was discriminatorily denied placement into higher ranking positions," could be construed as complaining either of discriminatory failure to promote or discrimination in initial placement. *See also* ¶ 10(a) (Von Zuckerstein "was discriminatorily denied access into higher classified jobs"). Both interpretations, we think, are reasonable, and under either theory, the allegations should not be dismissed. *See infra* at 1316–17.

7. Two recent decisions seem to have taken a more formalistic approach to the pleading requirements under *Patterson*. In *Majeske v. Chicago*, 740 F.Supp. 1350 (N.D.Ill.1990) and *Chicago Fire Fighters Union Local No. 2 v. Chicago*, No. 88 C 3773, 1990 WL 70515 (N.D.Ill. May 8, 1990), failure-to-promote claims were dismissed where the plaintiffs failed to allege that the

higher positions represented "new and distinct relations." Each of those cases, however, stressed the plaintiffs' failure to allege any facts from which it could be concluded that the promotion was an opportunity for a new and distinct relation; by contrast, the plaintiffs in this case have explicitly alleged the denial of promotions to supervisory and management positions. To the extent our holding in this case undercuts the *Majeske* and *Chicago Fire Fighters* decisions, we respectfully decline to follow them, particularly because it would be manifestly unfair to require plaintiffs who filed their complaint before *Patterson* to have predicted the precise language that the Supreme Court would use, and dismissal with leave to amend at this juncture, with trial right around the corner, would serve no purpose.

8. Plaintiffs' claims of removal from grant projects similarly must be dismissed because they assert either discriminatory discharge,

gations to state valid section 1981 claims. The term "laid off" is susceptible of two interpretations. First, as a term of art, "laid off" suggests a temporary removal of an employee from work, which is followed by an organized recall procedure. By contrast, "laid off" may also be used as a euphemism for "fired." Under the former construction, an employee retains certain rights, and if, for example, the recall of employees is conducted contrary to established procedure, an injured employee may sue. *See McKnight*, 908 F.2d at 109–10. The employment relationship, therefore, is not necessarily severed, and the rehiring will only trigger section 1981 protection if the new position rises to the level of a new and distinct relation. *Id.* If the lay-off reflects a more permanent termination, however, a rehiring represents the formation of a new contract within the meaning of section 1981. Construing the allegations in the light most favorable to the plaintiffs, we find the failure-to-rehire allegations sufficiently to assert discrimination with respect to opportunities to enter into new contracts with Argonne; indeed, Argonne itself concedes that "plaintiffs had no recall rights" (Defendant's Memorandum at 16 n. 8).

#### 4. *Discriminatory Demotion or Discrimination upon Hiring*

In general terms in paragraph 9(a) and specifically with reference to plaintiff Jain in paragraph 10(c), plaintiffs assert the discriminatory placement of immigrants in lower-paying professional positions than their "credentials dictate[ ]." These allegations can be construed either as claims of discriminatory post-hiring demotion or as charges of discrimination at the initial hiring stage. We agree with Judge Aspen's decision in *Bush v. Commonwealth Edison Co.*, 732 F.Supp. 895 (N.D.Ill.1990), that allegations of demotion relate to post-formation conduct and as such are not actionable under section 1981. Although demotions are in some ways similar to promotions—and significant demotions may

lead to "new and distinct relations" between the employer-demoter and the employee-demotee—those similarities are not significant for section 1981 purposes. *But see Kriegel v. Home Insurance Co.*, 739 F.Supp. 1538, 1540 (N.D.Ga.1990) ("[I]t follows [from the fact that discriminatory promotion remains actionable] that demotion claims remain actionable if the change in position results in 'a new and distinct relation.'"). The discrimination in demotion cases does not occur in the formation of the new relationship; rather, it lies in the termination of the old. The analogy to discharge cases, then, is more persuasive, and *McKnight* establishes unambiguously that discriminatory discharge is strictly post-formation, nonactionable conduct.

■ To the extent that these allegations purport to state a claim of discrimination in the formation of the original contracts of employment, they would clearly be cognizable under section 1981. Argonne contends in a footnote (and fails to develop elsewhere) that any claims of discrimination at the formation of the plaintiffs' contracts are time-barred by the statute of limitations for section 1981 claims that was in effect in Illinois at the time plaintiffs filed this action. Plaintiffs have not responded to this argument, however, and because the issue was raised only in a footnote, we do not consider it sufficiently presented for decision. *See United States v. Bentley*, 825 F.2d 1104, 1109 (7th Cir.), *cert. denied*, 484 U.S. 901, 108 S.Ct. 240, 98 L.Ed.2d 198 (1987). If the allegations refer to discrimination in the formation of the contracts rather than discriminatory demotion, then, they remain valid under section 1981.

#### 5. *Discrimination in the Enforcement of Contractual Rights*

In addition to protecting the right to enter into contracts without discrimination, section 1981 guarantees "the same right ... to ... enforce contracts ... as is enjoyed by white citizens." Plaintiffs Jain,

---

which *McKnight* holds to be nonactionable, or discriminatory demotion, which also cannot

support a § 1981 claim. *See infra* at 1316.

Ramaswami, Von Zuckerstein, and Chang allege two types of discrimination in the enforcement of contracts: first, they argue that Count II's assertions of Argonne's retaliation against plaintiffs for "fil[ing] charges and/or otherwise ma[king] their intention to proceed under the relevant civil rights acts known to the defendant" validly states a section 1981 claim; and second, they contend that Argonne's alleged denial to Von Zuckerstein of access to its internal grievance procedure (¶ 10(a)) is cognizable under section 1981.

Although the plaintiff in *Patterson* did not allege any discrimination in the enforcement of her contract with McLean Credit Union, the Court nevertheless explained in general terms the scope of that second guarantee of section 1981. The right to be free from discrimination in the enforcement of contracts, the Court expounded,

> embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices. It also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in enforcing the terms of a contract. Following this principle and consistent with our holding in *Runyon* that § 1981 applies to private conduct, we have held that certain private entities, such as labor unions, which bear explicit responsibilities to process grievances, press claims, and represent member [sic] in disputes over the terms of binding obligations that run from the employer to the employee, are subject to liability

under § 1981 for racial discrimination in the enforcement of labor contracts. See *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights.

109 S.Ct. at 2373 (emphasis in original). Discussing the protection afforded by section 1981 with respect to claims of retaliation, the Seventh Circuit in *McKnight* observed that "[r]etaliation or a threat to retaliate is a common method of deterrence, and if what is sought to be deterred is the enforcement of a contractual right, then, we may assume, the retaliation or threat is actionable under section 1981 as interpreted in *Patterson*, provided that the retaliation had a racial motivation." [9] 908 F.2d at 111. Because the conduct that prompted the alleged retaliation in *McKnight* was an attempt to enforce the plaintiff's rights under anti-discrimination laws, the Seventh Circuit found the claim to fall outside the aegis of section 1981; the court reasoned that statutory anti-discrimination laws "such as Title VII and section 1981 and their state equivalents" are not contractual obligations but rather "a species of tort right." *Id.* at 112; *see also Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990).

From plaintiffs' complaint, it appears that they too are alleging nonactionable retaliation by Argonne for prosecuting or attempting to prosecute their statutory rights under civil rights acts. In paragraph 15, which sets forth the conduct that allegedly precipitated the retaliation, plaintiffs aver that after they were discriminated against, "they filed charges and/or otherwise made their intention to proceed *under the relevant civil rights acts* known

---

**9.** The *McKnight* court refused to state with certainty that such a scenario would be actionable under § 1981, however, "out of deference to the [Supreme] Court's strongly expressed prefer-

ence in *Patterson* for interpreting section 1981 to avoid overlaps with Title VII." *McKnight*, 908 F.2d at 112.

to the defendant." (Emphasis added). Plaintiffs proceed, in paragraph 16, to describe the manifestations of this retaliation; they allege several specific types of retaliation, including denial of access to internal administrative procedures such as Argonne's grievance procedure, and then generally allege that Argonne "otherwise [sought] to impede these plaintiffs' exercise of their *statutory* rights." (Emphasis added).

Plaintiffs attempt, in their memorandum, to salvage their retaliation claim by asserting the existence of an Argonne Policy and Procedures Manual, which they claim sets forth the rights of employees and which explicitly establishes the right to be free from discrimination in the workplace and in employment and the right to present discrimination claims at an internal grievance procedure. Plaintiffs' Equal Employment Opportunity Commission ("EEOC") charges, they continue, were filed "in part[ ] to enforce these specific contract rights" (Plaintiffs' Response at 13). Even assuming that these provisions rise to the level of contract, *see Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987), plaintiffs' argument does not bring their claim within the parameters of section 1981. The EEOC is charged with enforcing Title VII of the Civil Rights Act of 1964 and does not entertain or adjudicate private contract disputes. If Argonne had retaliated against plaintiffs for filing a state law breach of contract suit predicated on the provisions in the Argonne Manual or for alleging a pendent state claim of contract breach in the instant action, they might have a claim, but those scenarios are counterfactual.

That leaves the internal grievance procedure. Citing *McKnight,* which expressly noted the absence of an anti-discrimination term in the contract between the plaintiff and his employer in that case, plaintiffs argue that they "have properly alleged that Argonne prevented and/or discouraged the plaintiffs from using the available legal process to enforce the specific anti-discrimination contract right" (Plaintiffs' Response at 13). Plaintiffs' confident assertion that the retaliation argument is "properly alleged" does not persuade us, for it is indeed a stretch to infer this claim from the complaint. But we believe that an internal grievance procedure can rise to the level of a "nonjudicial method of adjudicating disputes" as contemplated by *Patterson, see Hayes v. Community General Osteopathic Hospital,* 730 F.Supp. 1333, 1337 (M.D. Pa.1990), and plaintiffs' complaint, read in conjunction with their memorandum, presents the kernel of a cognizable claim. Because our refusal to dismiss other parts of plaintiffs' section 1981 claim entitles plaintiffs to a jury, and because we write without the guidance of the parties' final pretrial order, we decline to dismiss this claim. We advise the plaintiffs, however, that any lenience we exhibit now will not be echoed at trial, where plaintiffs will have to establish *inter alia* that the Argonne manual creates valid contractual rights and obligations, that the internal grievance procedure is a nonjudicial mechanism for resolving contract disputes, and that Argonne's specifically retaliated against them for pursuing (or intending to pursue) their *contract claims* in the internal grievance forum.

With respect to plaintiffs' second argument, that Argonne violated section 1981 when it denied Von Zuckerstein access to its grievance procedure, plaintiffs analogize their situation to cases where labor union refused to process grievances under a collective bargaining agreement. *Patterson,* citing *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), observed that labor unions have been held liable under section 1981 for that sort of discrimination, but only when the grievance that the union refused to process relates to the terms of the collective bargaining contract. *See Patterson,* 109 S.Ct. at 2373; *Goodman,* 482 U.S. at 666, 107 S.Ct. at 2623 ("the collective-bargaining contract contained an express clause binding both the employer and the Unions not to discriminate on racial grounds"). Without the added dimension of a contract dispute at the core of the internal grievance procedure, Argonne's denial of access is

nothing more than a violation of a term of its contractual agreement with plaintiffs, which is not actionable under section 1981. *See Hall v. County of Cook,* 719 F.Supp. 721, 724–25 (N.D.Ill.1989). Argonne would be exposed to section 1981 liability for the denial of access to this forum only if plaintiffs sought there to redress the alleged breach of the manual's anti-discrimination provision. This allegation is not laid out in the complaint, but again, it can be inferred from plaintiffs' memorandum, and we think it best to sort this issue out at trial. To succeed on this claim, plaintiffs will have to establish at that time that they sought to use the internal grievance procedure to vindicate their contractual right to be free from discrimination.

## II. *Summary Judgment Against Plaintiff Poling Chang*

In a separate motion filed only against Poling Chang, Argonne asserts that judgment in its favor is warranted as a matter of law in light of Poling Chang's concession that she cannot produce any evidence to support her allegations. Poling Chang is pursuing the discrimination claim on behalf of her husband Han Chang, who died subsequent to filing this suit. In essence, Argonne is arguing that Poling Chang admitted through deposition testimony and responses to interrogatories that she has no knowledge of any facts that would support the allegations pertaining to Han Chang in the complaint. Although Poling Chang was able to identify several individuals who she claimed have knowledge of relevant facts, Argonne continues, she herself could not identify any of those facts known to others.

Argonne's assumption that Poling Chang must be able independently to prove her allegations and must memorize and be able to recite the anticipated testimony of her witnesses is not only incorrect but also close to preposterous. A plaintiff need not personally have knowledge of all of the elements of his case; a passenger injured in a train accident, for example, may successfully sue the train company for negligence even though he has no personal knowledge of how the company's employ-

ees conducted themselves during the relevant period. For such purposes witnesses exist. Federal Rule of Civil Procedure 56 is a mechanism for ferreting out weak claims by determining through proxies whether sufficient evidence exists to permit a rational jury to find for the nonmoving party. Speculation on the part of the plaintiff about what his witnesses know is perhaps the most unreliable of all possible proxies; the filter of the plaintiff's understanding and memory can only obscure the truth and cast doubt upon the accuracy of the evidence, which, through the mouth of the plaintiff, would likely be hearsay anyway. There certainly is no requirement, contrary to Argonne's suggestion, that a nonmovant is limited to this method of proof in contesting a motion for summary judgment.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), on which Argonne relies in part, does not in any way support Argonne's contention. The plaintiff in that case, pursuing, as administratrix of her husband's estate, a wrongful-death action against Celotex Corporation, apparently did not have personal knowledge that would connect her husband's injuries to any Celotex product. In response to Celotex's motion for summary judgment, however, she produced three documents that she claimed established the existence of a genuine material factual dispute: a transcript of her husband's deposition, a letter from an official of a former employer of her husband, and a letter from an insurance company. Celotex argued successfully at the district court level that it was entitled to summary judgment not because plaintiff-administratrix did not have personal knowledge of facts that would support her claim but rather because the only evidence that she did proffer was not admissible. The court of appeals and the Supreme Court, however, limited their consideration to the issue of whether a party moving for summary judgment must come forward with proof of the absence of any genuine issues of material fact before the nonmoving party is required to respond. Concluding that summary judg-

ment is appropriate whenever the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof regardless of whether the moving party supports its motion with evidence negating the nonmovant's claim, the Court explicitly declined to evaluate the substance of Celotex's motion, observing that "the Court of Appeals with its superior knowledge of local law is better suited than we are to make these determinations in the first instance." 477 U.S. at 327, 106 S.Ct. at 2555. On remand, the D.C. Circuit denied a renewed motion for summary judgment. *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). To the extent that "the summary judgment principles set forth in *Celotex* are applicable to this case" (Defendant's Reply at 10), then, Argonne is conceding defeat.

■ Poling Chang is clearly entitled to go beyond her own depositions and answers to interrogatories to establish a genuine issue of material fact,[10] and in her response to Argonne's motion, she offers four pieces of additional evidence: affidavits of her husband Han Chang and Von Zuckerstein; Han Chang's answers to interrogatories; and Han Chang's charge of discrimination filed with the EEOC. In its reply memorandum,[11] Argonne challenges the admissibility of this evidence, arguing first that the affidavits contradict Poling Chang's own interrogatory answers and deposition testimony and must be disregarded under *Miller v. A.H. Robins Co.*, 766 F.2d 1102 (7th Cir.1985). While we agree with Argonne that in most cases "[p]arties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions," *Miller*, 766 F.2d at 1104, neither Han Chang's nor Von Zuckerstein's affidavit contradicts Poling Chang's deposition testimony. Poling Chang does not admit in her deposition a complete lack of proof regarding her claim; she merely disclaimed personal knowledge of the details of the case (*see, e.g.*, Poling Chang Dep. at 35, 59). Von Zuckerstein's and Han Chang's affidavits do not assert to the contrary that Poling Chang has personal knowledge of relevant facts but rather supplement her deposition testimony. Indeed, the only statement that these affidavits contradict is Argonne's assertion that "[Poling] Chang is unable to produce any evidence to support the allegations contained in the third amended complaint" (Defendant's Memorandum at 1).

Argonne next attacks the admissibility of Han Chang's interrogatory answers, affi-

---

10. That Poling Chang may have "admitted" the contents of Argonne's 12(m) statement by failing to provide a 12(n) submission does not undermine her efforts to defeat Argonne's motion. The 12(m) statement consists of nothing more than Poling Chang's answers to Argonne's interrogatories and neither establishes the absence of a genuine issue of material fact nor provides Poling Chang with any assertions that she can controvert.

11. Argonne's original motion and memorandum seeks to demonstrate the absence of a genuine issue of material fact by reference to Poling Chang's answers to interrogatories and deposition alone. Because of this limited focus, Poling Chang contends that Argonne failed to identify those portions of the record that demonstrate the absence of a genuine issue of material fact and that therefore it cannot prevail regardless of the quantum of evidence that Poling Chang is able to produce in defense of her claims; the additional evidence is merely offered in support of an alternative argument. It is quite likely that the foregoing discussion of the deficiencies of Argonne's position conclu-

sively resolves the motion, for *Celotex* clearly places on the moving party

> the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

477 U.S. at 323, 106 S.Ct. at 2553. Argonne's 12(m) statement, moreover, speaks only to Poling Chang's inability personally to prove her allegations. But Argonne does assert in rather sweeping language that "[Polling] Chang can not [sic] produce any evidence to support any of the allegations set forth in her third amended complaint" (Defendant's Memorandum at 1–2), arguably broadening the scope of its motion. Because the parties discuss (Poling Chang in her response and Argonne in its reply) the sufficiency of Poling Chang's additional evidence, and because the issue is so easily resolved in Poling Chang's favor, we continue with our analysis.

davit, and charge of discrimination, contending that they are hearsay. Argonne merely asserts that these submissions constitute inadmissible hearsay, failing to point to specific offending passages and to support or document its sweeping allegation of hearsay in any way. And it is not obvious to this court that the facts set forth in these submissions [12] are hearsay; Han Chang's answer to interrogatory number 4, for example, sets forth the details of two instances of alleged discriminatory removal and includes such assertions as "[i]n 1980, plaintiff Dr. Change [sic] was in charge of the development of a report entitled, 'Environmental Implications of Accelerated Gasahol Production,' and was the report's principal contributor."

Despite the patent deficiencies of Argonne's argument, we cannot consider Han Chang's evidence for the purpose of this motion because Han Chang is no longer available to testify at trial. The purpose of a summary judgment motion is to determine whether enough evidence will likely be presented at trial so that a jury could find for the non-moving party. Written substitutes for oral testimony are accepted as indicators of what the jury will hear. Where an affiant or interrogatory answerer will clearly not be able to repeat the statements in his affidavit or the answers to the interrogatories at trial, that evidence no longer previews testimony that the jury will hear and therefore will not affect in any way what the jury could conclude.

That leaves us with the Von Zuckerstein affidavit. Claiming that this submission, too, must be ignored by the court, Argonne argues that "it is a hodge podge of conclusions unsupported by any foundation or even any assertion by the affiant that he has personal knowledge of the matters discussed ... [and] also contains rank hearsay" (Defendant's Reply at 5). Argonne illustrates this criticism with three specific examples (¶¶ 3, 9, and 11) and proceeds to

condemn "[a]ll of the remaining paragraphs" as "suffer[ing] from similar deficiencies" (Defendant's Reply at 6). To the extent that we consider Argonne's loosely structured argument to constitute a motion to strike Von Zuckerstein's affidavit, *see* 10A C. Wright, A. Miller & A. Kane, *Federal Practice and Procedure* § 2738, at 507 (2d ed. 1983), it does not, beyond the three noted examples, state with sufficient specificity what should be stricken and why. *See* 6 J. Moore, W. Taggart & J. Wicker *Moore's Federal Practice* ¶ 56.22[1], at 56–764 (2d ed. 1985). Moreover, although we agree that statements in affidavits that are nothing more than broad conclusions, *see Corinthian Pharmaceutical v. Lederle Laboratories,* 724 F.Supp. 605, 609 (S.D. Ind.1989), or that smack of hearsay should be disregarded, much of Von Zuckerstein's affidavit does not fall into either of those categories.

Specifically, paragraphs 7 and 8, in which Von Zuckerstein asserts that Han Chang was removed, by his supervisor, from a position that company policy reserved to him and was replaced by a less-qualified native-born employee and that this supervisor repeatedly made disparaging remarks about foreign- and in particular Chinese-born employees, contain statements that are admissible and sufficient to establish a prima facie case of discrimination under the indirect method of proof. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668 (1973); *Morgan v. Harris Trust and Savings Bank,* 867 F.2d 1023, 1026–27 (7th Cir.1989). We note that the evidence submitted by Poling Chang is not overwhelming and perhaps represents only a portion of the case she will present at trial (Von Zuckerstein adverts in his affidavit, for example, to a 28–day deposition). Poling Chang goes well beyond merely identifying the witnesses that she will call at trial, however, and Argonne's motion

---

12. The cases cited by Argonne in support of its assertion that hearsay statements should not be considered on motion for summary judgment speak to the *content* of the submissions rather than to their form. *See Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 570 n. 4

(7th Cir.1989) ("Rule 56(e) requires that supporting evidentiary affidavits 'shall set forth facts as would be admissible in evidence.' ... [O]ur cases have stressed that we are unable to consider hearsay statements that are not otherwise admissible at trial.").

**1322**

does not realistically merit much more of a response.

## CONCLUSION

For the foregoing reasons, Argonne's motion for summary judgment against Pol-ing Chang is denied. Argonne's motion to dismiss plaintiffs' section 1981 claims is granted with respect to the allegations of harassment, denial of pay raises and comparable compensation, improper use of grant monies, denial of access and exposure, discharge (including removal from grant projects), and demotion; with respect to all remaining allegations, the motion is denied.