908 F.2d 972
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marva CHRISTIAN, Plaintiff-Appellant,
v.
BEACON JOURNAL PUBLISHING COMPANY, Defendant-Appellee.
 No. 89-3822.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges; and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff appeals the summary judgment for defendant in this employment discrimination suit. We agree with the district court that there is no genuine issue of material fact to support plaintiff's age and race discrimination claims. Therefore, we shall affirm the district court's decision.
 
 I.
 
 2
 Marva Christian is a black female who was born on May 20, 1946. She was hired by Beacon Journal Publishing Company ("Beacon") on March 12, 1979 as a truck driver. Christian's employment record at Beacon included a verbal reprimand in 1979, a written reprimand in 1980, counseling in 1981, another reprimand and two suspensions in 1982. Christian missed seventy-one workdays in 1984, sixty-eight days in 1985, and seventy-four days in 1986, which Christian blames on back problems. In 1986, she requested a transfer to a less physically demanding position in Beacon's mailroom, but was denied that request allegedly because of her poor work record. Christian's absenteeism continued into 1987, and, after a final warning, she was terminated on May 28, 1987 for her "lack of dedication, care, trustworthiness, absenteeism, and other good cause" when she failed to report to work after exhausting her sick leave and personal leave days. Christian's union grieved her termination unsuccessfully, but refused to pursue arbitration on her behalf.
 
 
 3
 On May 31, 1988, Christian sued Beacon for wrongful discharge in Summit County, Ohio Common Pleas Court. She alleged violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. Sec. 621, et seq. and the Civil Rights Act of 1966, specifically 42 U.S.C. Sec. 1981. Beacon removed the case to federal court, and in due course moved for summary judgment pursuant to Fed.R.Civ.P. 56.
 
 
 4
 The district court granted Beacon's motion on August 4, 1989. Christian appeals, requiring us to review the district court's decision de novo. See Burkhart v. Post-Browning, Inc., 859 F.2d 1245, 1249 (6th Cir.1988). Summary judgment may be affirmed only if "there is no genuine issue as to any material fact" and Beacon is entitled to "a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).
 
 II.
 A. The Age Discrimination Claim
 
 5
 In order to establish a prima facie violation of ADEA, plaintiff must prove by a preponderance of evidence that she belongs to the class protected by the statute--between forty and seventy years old, was performing her job satisfactorily, and was discharged under circumstances that give rise to an inference that age was the unlawful reason. Grubb v. W.A. Foote Mem. Hosp, Inc., 741 F.2d 1486, 1497-98 (6th Cir.1984), modified, 759 F.2d 546, cert. denied, 474 U.S. 946 (1985) (citations omitted). If plaintiff meets her burden of production as to these prima facie requirements, the employer must produce evidence showing that the termination was based on a legitimate, nondiscriminatory reason. Id. at 1498 (citations omitted). If the employer meets this burden of production, plaintiff, who maintains the ultimate burden of proving that her discharge was due to age, must produce evidence sufficient to demonstrate that the legitimate, nondiscriminatory reason the employer provides is pretextual. Ridenour v. Lawson Co., 791 F.2d 52, 56 (6th Cir.1986).
 
 
 6
 The district court dismissed Christian's ADEA claim on the basis of her failure to establish a prima facie claim. Although it found that Christian, who was forty-one as of the date of her termination, was within ADEA's protected class, the court concluded that Christian could not show she had performed her job satisfactorily, given her poor attendance record, and could cite no evidence from which an inference of age discrimination could be made. Christian now assigns error to that conclusion, relying 1) on a report Beacon had sent to Akron, Ohio's housing authority on May 14, 1986 stating that Christian's probability of continued employment was "good"; 2) that Beacon recorded birthdates on its personnel records; 3) that younger employees dismissed for drug abuse had been accorded disability leave, vocational training, and recall while she had not; and 4) the fact that her 1986 transfer request was denied.
 
 
 7
 We agree with the district court that this evidence does not raise a genuine issue of material fact as to whether Christian has established a prima facie claim of age discrimination. Beacon's "good" report to Akron's housing authority in 1986 does not establish Beacon's satisfaction with Christian's work performance, and cannot refute evidence of Beacon's dissatisfaction with Christian's efforts after 1986. The facts of this case do not suggest that Christian was terminated on the basis of age since her work record was so poor and she was replaced by drivers aged thirty-nine and forty. Beacon was required to record employee birthdates under the Equal Employment Occupation Commission's 29 C.F.R. Sec. 1627.3(a)(3) (1989). Christian's drug abusing comparators were not situated similarly to her. We also draw no adverse inference from the fact that her 1986 transfer request was denied.
 
 B. The 18 U.S.C. Sec. 1981 Claim
 
 8
 In her 18 U.S.C. Sec. 1981 claim, Christian alleges that Beacon denied her the mailroom transfer and ultimately dismissed her due to her race. She asserts that her supervisors, dark-skinned blacks, discriminated against her for being a light-skinned black. In support, she claims that two white workers were given an opportunity to transfer to Beacon's mailroom while she was not, and says a co-worker told her that one of her bosses made a disparaging remark about "yellow niggers." Christian also asserts that her termination was in retaliation for her having filed charges against Beacon with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission in 1982 and again in 1987, just before being fired.
 
 
 9
 The district court dismissed Christian's section 1981 claim primarily in reliance on Patterson v. McLean Credit Union, 109 S.Ct. 2363 (1989). Based on its reading of Patterson, the court concluded that section 1981 does not support a claim of wrongful denial of a transfer request or retaliatory discharge. Alternatively, the district court concluded that Christian failed to establish a prima facie claim of racial discrimination as to the transfer or retaliatory discharge since the white workers who were given an opportunity to work in the mailroom did not have poor performance records comparable to hers, and the disparaging "yellow niggers" comment attributed to her boss was inadmissible hearsay.
 
 
 10
 We agree with the district court's understanding of Patterson as disposing of Christian's discriminatory transfer denial and retalitory discharge claims.
 
 
 11
 In Patterson, a black woman sued her former employer under section 1981 for racial harassment and for denying her a promotion and discharging her allegedly because of her race. The Supreme Court was asked to review the district court's dismissal of her harassment claim and the propriety of a jury instruction that required petitioner to show she was better qualified for the promotion than the white applicant who got the job in order to establish a section 1981 claim. The Court held that "racial harassment relating to the conditions of employment is not actionable under Sec. 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." Id. at 2369. It also held that the district court erred in giving the instruction in question. Id.
 
 
 12
 The import of the Court's ruling in Patterson was to explain that section 1981 "cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." Id. at 2372. Consistent with that interpretation of section 1981, the Court prefaced its ruling on the promotion instruction issue by stating, "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under Sec. 1981." Id. at 2377.
 
 
 13
 Christian's requested transfer to the mailroom did not implicate the "making and enforcement" of "a new and distinct relation" with her employer since her rights and obligations under her union's collective bargaining agreement with Beacon would not have been altered by the move. Thus, Christian cannot allege discriminatory denial of her transfer request under section 1981. See also Becton v. Burlington N. R.R. Co., No. 86-6136 (6th Cir. July 10, 1989) (per curiam ).
 
 
 14
 We also read Patterson to suggest that claims of retaliatory discharge may not be brought under section 1981. Retaliation and discharge do not involve the "making and enforcement of contracts." See Singleton v. Kellogg Co., No. 89-1073 (6th Cir. November 29, 1989) (per curiam ).
 
 III.
 
 15
 For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 16
 89-3822--Marva Christian v. Beacon Journal Publishing Company
 
 
 17
 EDWARDS, Concurring. This case was submitted on briefs and decided by summary judgment for the defendant. The plaintiff here admits she was absent from scheduled workdays 71 days in 1984, 68 days in 1985 and 74 days in 1986, but claims that she always had legitimate excuses for missing work such as illness or personal emergency. Defendant states that plaintiff missed over one-third of her scheduled workdays in 1984, 1985, and 1986 and that it cost the Beacon Journal substantial expenses in hiring and paying overtime to substitute drivers.
 
 
 18
 All panel members believe that summary judgment for the defendant was appropriate. For the reasons set forth immediately above, I concur with the result reached by my colleagues.