918 F.2d 178
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Albert BOHANAN, Jr., Plaintiff-Appellant,
v.
UNITED PARCEL SERVICE, et al., Defendant-Appellee.
 No. 90-3155.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1990.
 
 Before NATHANIEL R. JONES and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This suit involves two claims: denial of promotion on the basis of race in violation of 42 U.S.C. Sec. 1981, and retaliatory discharge. The district court granted summary judgment on both claims in favor of defendants. We affirm.
 
 
 2
 * Defendant-appellee United Parcel Service (UPS) is a package delivery company employing both part-time and full-time hourly and management personnel. In 1974, UPS hired plaintiff-appellant Albert Bohanan, Jr., as a part-time loader/unloader. Two years later UPS promoted Bohanan to part-time operations supervisor. One year later, Bohanan moved into the Personnel Department as a part-time supervisor. Bohanan desired to become a full-time supervisor, which involved increases in benefits, pay, and responsibility. A prerequisite to becoming a full-time supervisor was ninety days as a package delivery driver. Bohanan turned down an opportunity to drive in 1981. J.App. at 789 (Bohanan deposition). Bohanan was again considered for and denied promotion to full-time in 1984. Id. at 178 (Welborn deposition).
 
 
 3
 Bohanan, Dauryce Sowell, and Clement Shanklin, Jr., who at the time were all part-time supervisors, filed this suit on February 27, 1985 in the U.S. District Court for the Southern District of Ohio, Judge George Smith presiding, against UPS and UPS supervisory employees Jim Ross, Ronald Welborn, Harold Lustgarten, Phillip Lambert, Thomas Rhodes, Robert Withrow, John Browne, and John Spriggs. The complaint alleged that Bohanan, Sowell, and Shanklin were denied promotions and salary increases on the basis of race in violation of 42 U.S.C. Secs. 1981, 1985, 1986, and the fourteenth amendment of the U.S. Constitution.
 
 
 4
 Following the filing of this action in February 1985, UPS deposed Bohanan in October 1985. Bohanan was asked if he had ever disseminated personnel documents without authorization. Bohanan stated that he had never improperly disclosed personnel office documents. J.App. at 792 (Bohanan deposition). On December 10, 1985, Bohanan met with several of his supervisors. Following this meeting, Bohanan filed a charge with the Ohio Civil Rights Commission (OCRC) alleging that he was harassed and reprimanded at the December 10 meeting for filing the lawsuit. Id. at 687. In responding to the charge, UPS subpoenaed a file from an earlier OCRC charge filed by (then) co-plaintiff Sowell. This file contained a confidential document known as the Personnel Report System (PRS) which contained employment data for all supervisory employees in the region. At the top of the PRS was a note in Bohanan's handwriting which read "Bruce, PT to FT are marked in red ink."
 
 
 5
 On January 16, 1986, UPS again deposed Bohanan. Bohanan acknowledged that he had given the PRS to Sowell to help Sowell prepare for his OCRC charge. Id. at 974. Bohanan testified that he knew that "you can't take company documents away from the premises", but that he had only sent Sowell a copy of the original retrieved from the trash, and that his supervisor, Ed Rouchion, a black male who no longer worked at UPS, had told him he could keep it. Id. at 974-75. UPS then deposed Rouchion, who testified that the PRS report was in a file marked "Do not remove from office", that the outdated reports were shredded, not thrown in the trash, and that he never authorized Bohanan to take a copy. Id. at 437.
 
 
 6
 On March 14, 1987, UPS fired Bohanan for violation of the company's integrity policy. Plaintiffs then filed an amended complaint on June 11, 1987, alleging that the discharge was in retaliation for this lawsuit. The amended complaint also added John Steinbrink as a defendant.
 
 
 7
 Under the terms of a stipulated dismissal filed on September 29, 1987, plaintiffs voluntarily dismissed the section 1985, section 1986, and fourteenth amendment claims. On November 2, 1987, defendants filed two motions for partial summary judgment relating to plaintiffs' promotion claims and Bohanan's section 1981 discriminatory discharge claim. The district court granted the motions for partial summary judgment on July 28, 1989. Defendants then filed a motion for summary judgment on the section 1981 salary and racial harassment claims. On January 25, 1990, the district court granted defendants' motion for summary judgment and dismissed the case.
 
 
 8
 Plaintiffs filed their notice of appeal on February 15, 1990. On September 5, 1990, defendants filed a motion to dismiss the appeals of Sowell and Shanklin because they were not named as appellants in the notice of appeal as required by Fed.R.App.P. 3(c) and Minority Employees v. Tennessee Dep't of Emp. Sec., 901 F.2d 1327 (6th Cir.1990) (en banc). Defendants' motion was granted on September 21, 1990. Albert Bohanan, Jr., then, is the only plaintiff before this court on appeal.
 
 II
 
 9
 We review de novo the district court's grant of summary judgment. Summary judgment is appropriate if the plaintiff does not make a showing sufficient to establish the existence of an element essential to his case and on which plaintiff bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). It is not sufficient for plaintiff to point to a mere scintilla of evidence; our inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)
 
 
 10
 Bohanan's failure to promote claim under section 1981 was treated by the district court as a disparate treatment action.[1] As a result, the district court applied the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). McDonnell Douglas initially places the burden on Bohanan to demonstrate that he applied for an available position for which he was qualified, that he was rejected, and that UPS continued to seek applicants. Id. The employer can rebut the presumption that the action was taken for impermissible reasons by articulating "some legitimate, nondiscriminatory reason for the employee's rejection." Id.
 
 
 11
 Bohanan applied for the available full-time supervisor's position, but the district court found that Bohanan failed to designate specific facts showing that he was qualified. The district court found that Bohanan's claim that he was qualified was based solely on his own subjective evaluation. J.App. at 1418. Bohanan was required to prove only that he was qualified for the full-time supervisory position, "not that he was more qualified than the successful applicant." Bernard v. Gulf Oil Co., 841 F.2d 547, 570 (5th Cir.1988). In this case, Bohanan arguably demonstrated his qualifications for the full-time supervisory position. He had been a UPS employee since 1974 and a part-time supervisor since 1977. Bohanan also had three years of undergraduate hours in management courses. J.App. at 834 (Bohanan deposition). In addition, UPS failed to promote Bohanan in 1984 not out of a concern about his qualifications, but because of rumors that Bohanan was dating an hourly employee. J.App. at 177 (Wellborn deposition).
 
 
 12
 "The burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Assuming that Bohanan has met this burden, we next examine whether UPS' evidence "would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. at 257. The district court found that UPS submitted evidence rebutting the presumption of discrimination: (1) deposition testimony indicating that some full-time supervisory positions went to blacks; (2) statistics showing blacks were promoted to full-time positions in higher proportions than whites[2]; and (3) testimony establishing that black management employees participated in the evaluation process. Id. Given this evidence, we find that UPS has rebutted any inference of discrimination Bohanan may have raised.
 
 
 13
 The final inquiry under McDonnell Douglas is whether Bohanan can establish that UPS' proffered reasons for failing to promote him were a pretext for discrimination. 411 U.S. at 804. Bohanan can meet his burden by either (1) "persuading the court that a discriminatory reason more likely motivated the employer", or (2) "showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256 (citation omitted). In this respect, we agree with the district court's conclusion that Bohanan offered "no evidence that defendants intentionally discriminated in the promotion process, but rather state[s] a dissatisfaction with the employer's discretionary power to choose[.]" J.App. at 1419. In addition, Bohanan testified that dissatisfaction with the promotional system among part-time supervisors was widespread and that "at the time [it] was not a black/white issue ... it was a concern of the entire management group[.]" J.App. at 674. Bohanan failed to establish that UPS' nondiscriminatory reasons for not promoting him were a pretext for racial discrimination.
 
 
 14
 Bohanan argues that the district court incorrectly applied the McDonnell Douglas test by requiring that he produce direct evidence of discriminatory intent. TWA Inc. v. Thurston, 469 U.S. 111, 121 (1985) (McDonnell Douglas test designed to assure "plaintiff [has] his day in court despite the unavailability of direct evidence.' "). Bohanan states that "intent can be inferred by circumstantial evidence" and points to the following to demonstrate discrimination in failure to promote: (1) after a white woman received a promotion he requested, Bohanan's white supervisor told him in 1981 he could ruin his career at UPS; (2) another white supervisor gave him a low performance rating; and (3) he was removed from drivers' training because he was dating an hourly employee.
 
 
 15
 After reviewing the record, however, we do not find even circumstantial evidence which would indicate that UPS' failure to promote was a pretext for discrimination. UPS "has discretion to choose among equally qualified candidates, provided the decision is not based on unlawful criteria." Burdine, 450 U.S. at 259. Bohanan's allegations do not establish, as is required by Burdine, 450 U.S. at 256, either that a discriminatory reason motivated UPS or that UPS' reasons were not worthy of belief. Without any further evidence, we find that the district court correctly granted summary judgment on this issue. See Irvin v. Airco Carbide, 837 F.2d 724, 726 (6th Cir.1988) (to demonstrate "pretext" in discriminatory demotion case under McDonnell Douglas, "a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive.").
 
 III
 
 16
 Bohanan also asserts a section 1981 retaliatory discharge claim. The district court stated that this claim was properly put forth under Patterson v. McClean Credit Union, 109 S.Ct. 2363 (1989), because Patterson held that section 1981 covers "conduct which impairs the right to enforce contract obligations through legal process." Id. at 2374. As Bohanan argues that he was fired for bringing an OCRC charge, we agree that this claim is not preempted by Patterson.
 
 
 17
 In order to prevail on his retaliatory discharge claim, Bohanan must establish that: (1) he engaged in protected activity; (2) that he was "the subject of an adverse employment action; and (3) that there is a causal link between [the] protected activity and the [employer's] adverse action." Cooper v. City of North Olmstead, 795 F.2d 1265, 1272 (6th Cir.1986). The district court found that "Bohanan has proven that he was discharged and that he had engaged in protected enforcement of contractual obligations." J.App. at 1420. However, the district court also found that there was no causal link between the lawsuit and the discharge other than the fact that Bohanan was discharged soon after filing this suit and the OCRC charge. Moreover, UPS has identified a non-discriminatory reason for the discharge: Bohanan's release of the confidential PRS document. Bohanan argues that his actions were not grounds for firing because deposition testimony of defendants indicating that the PRS was customarily given to supervisory employees such as Sowell, and that he was not aware he could not pass on the information.
 
 
 18
 UPS introduced testimony showing that the PRS files were not intended to be used for unauthorized purposes. J.App. at 433-34. UPS also introduced evidence that a former part-time clerk had been terminated after being caught copying personnel documents for unauthorized use in a union grievance proceeding. J.App. at 248. Ed Rouchion, Bohanan's supervisor at the time, also testified that Bohanan was not authorized to disseminate the PRS documents.
 
 
 19
 Even if Bohanan's claim that passing on the PRS did not violate UPS policy is accepted, the causal link necessary to establish retaliatory discharge is not necessarily established. In Jeffries v. Harris Cty. Community Action Ass'n, 615 F.2d 1025 (5th Cir.1980), a plaintiff who had filed an EEOC charge was fired after disseminating another employee's personnel file without authorization. The court rejected the retaliatory discharge claim, holding that "where an employer wrongly believes an employee has violated company policy, it does not discriminate ... if it acts on that belief." Id. at 1036 (emphasis in original). In any event, the discrepancy in Bohanan's deposition testimony regarding whether he had disseminated documents is uncontested, and supports a finding of a violation of the honesty policy. We conclude, therefore, that the summary judgment for UPS should be affirmed because Bohanan fails to raise any issue of material fact which would preclude judgment for UPS.
 
 IV
 
 20
 As Bohanan has failed to meet his evidentiary burden with respect to the failure to promote and retaliatory discharge claims, we AFFIRM the district court's grant of summary judgment for defendants.
 
 
 21
 WELLFORD, Circuit Judge, concurring.
 
 
 22
 I concur, in most respects with the well considered per curiam opinion. I do not agree, however, with the references made to Patterson v. McLean Credit Union, 109 S.Ct. 2363, 2377 (1989), in several respects. First, the promotion involved here may not fall outside the perimeter of Patterson which admonishes that to be actionable under Sec. 1981 the failure to promote must fall in the context of "a new and distinct relation between the employee and employer." Bohanan was already a supervisory employee and he sought a better paying supervisory position. I am not at all sure that we can even assume this would involve a new and distinct employment relationship. It is not necessary to reach a decision or make an assumption on this question under Patterson to reach the correct result attained in this case as to promotion.
 
 
 23
 As to the retaliatory discharge claim under Sec. 1981, I similarly doubt that this claim is cognizable under Patterson. I am disposed to believe that retaliation relates to "terms or conditions" of employment as Patterson indicates in the Title VII context. Patterson, 109 S.Ct. at 2374. See Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986). I would be disposed to treat retaliation as relating to the "conditions of employment" covered clearly under Title VII and not properly conduct "which impairs the right to enforce contract obligation" under Sec. 1981. Id. at 2374.
 
 
 24
 In any event, I concur with the conclusion carefully drawn on the merits of this case that Bohanan has proved neither a discriminatory failure to promote nor retaliation due to his race, and thus I concur in the affirmance of the grant of summary judgment to defendant.
 
 
 
 [1]
 UPS argues that Bohanan's section 1981 failure to promote claim should be preempted in light of Patterson v. McLean Credit Union, 109 S.Ct. 2363 (1989). Patterson states that failure to promote claims are not actionable under section 1981 unless the "promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." Id. at 2376. In the instant case, a promotion to full-time supervisory status brings with it increases in pay, shares of stock, and the opportunity to evaluate part-time hourly and supervisory employees. We assume, therefore, that full-time supervisory status is a "new and distinct" relationship under Patterson. See Mallory v. Booth Refrigeration Supply Co., Inc., 882 F.2d 908, 910 (4th Cir.1989) ("Promotion from clerk to supervisor with a consequent increase in responsibility and pay satisfies this ['new and distinct'] test
 
 
 [2]
 UPS' statistical evidence showed that blacks received 14.9% of the promotions from part-time to full time, although only 11.2% of the part-time supervisors were black. Of course, any racial discrimination against Bohanan could not be justified by evidence of a racially-balanced workforce, but such evidence may "assist an employer in rebutting the inference that [a] particular action had been intentionally discriminatory[.]" Connecticut v. Teal, 457 U.S. 440, 454 (1982)