James T. HARVIS, Jr., Plaintiff,

Maurice Rivers and Robert C. Davison, Plaintiffs–Appellants,

v.

ROADWAY EXPRESS, INC., Defendant–Appellee.

No. 91–3348.

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1992.

Decided Aug. 24, 1992.

Rehearing and Rehearing En Banc Denied Oct. 13, 1992.

Cornelia T.L. Pillard (argued and briefed), NAACP Legal Defense & Educational Fund, New York City, Ellis Boal, Detroit, Mich., for plaintiffs-appellants.

Thomas J. Gibney (argued and briefed), Thomas A. Dixon, John T. Landwehr, Eastman & Smith, Toledo, Ohio, for defendant-appellee.

Before: GUY, BOGGS, and SILER, Circuit Judges.

BOGGS, Circuit Judge.

In this race discrimination case, the appellants originally claimed they were discharged because of racial discrimination and now state that the claim was also for retaliatory discharge for winning a grievance, exercised for racial reasons. The claim was dismissed by the district court based upon the United States Supreme Court ruling in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). On appeal, appellants argue that the district court misapplied *Patterson*, but that even if their claim had been properly dismissed, this court should reinstate their claim by retroactively applying to this case the new Civil Rights Act of 1991 (CRA of 1991), Pub.L. No. 102–166, 105 Stat. 1071–1100, 42 U.S.C. § 1981, which explicitly enacted the interpretation of § 1981 rejected in *Patterson*. We reverse on the grounds that the district court misapplied *Patterson* to dismiss appellants' retaliatory discharge claim. We affirm the district court's dismissal of the race discrimination in firing claim, and hold that the CRA of 1991 should be not applied retroactively to this case.

I

Plaintiffs-appellants Maurice Rivers and Robert C. Davison are Black garage mechanics who were employed by defendant Roadway Express, Inc. since 1972 and 1973 respectively. On the morning of August 22, 1986, Roadway verbally informed Rivers and Davison that they were required to attended disciplinary hearings that same

day related to their accumulated work record. Both plaintiffs refused to attend, alleging inadequate notice. Roadway was contractually required to provide prior written notice of such hearings and allegedly routinely did so for white employees. The hearings resulted in two-day suspensions for both appellants. Appellants filed grievances with the Toledo Local Joint Grievance Committee (TLJGC), which granted the grievances based on "improprieties" and awarded each appellant two days of back pay.

Shortly after these initial hearings, disciplinary hearings were again called by Roadway's Labor Relations Manager, James O'Neil, who announced that he would hold disciplinary hearings against Rivers and Davison within seventy-two hours. Rivers and Davison again refused to attend, claiming inadequate notice. As the result of the hearings, both Rivers and Davison were discharged on September 26, 1986, for refusing several direct orders to attend the hearings and for their accumulated work record.

In February 1987, Rivers and Davison, along with James T. Harvis, filed this suit, alleging that Roadway discriminated against them on the basis of race, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. They also alleged that Roadway violated the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), and brought an unfair representation claim against their union. Both of these latter claims were dismissed on summary judgment by the district court.

The district court then separated Harvis's case, which went to trial and ended in a jury verdict on the § 1981 claim for Roadway. The district court ordered judgment against Harvis on his § 1981 and Title VII claims. Harvis's appeal to this court was denied and the trial court's judgment affirmed. *Harvis v. Roadway Express, Inc.*, 923 F.2d 59 (6th Cir.1991).

On June 15, 1989, shortly after Harvis's verdict and before appellants went to trial, the Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which held that the right to make contracts protected by § 1981 does not apply to conditions of employment, but only covers discrimination in the formation of the employment contract or the right to enforce the contract. The district court, while holding that *Patterson* was not retroactive with respect to Harvis's jury verdict, held it did have retroactive effect on the untried and pending § 1981 claims of Rivers and Davison. The district court concluded that appellants' claims were for discriminatory discharge and thus, based on *Patterson,* could not be maintained under § 1981. Rivers and Davison argued that their claims were not simply for discriminatory discharge, but rather for retaliation for their success in enforcing contract rights in a grievance hearing. However, the district court held that these were only basic breach of contract claims, and not claims based on the right to enforce contracts, which would fall under § 1981. After dismissing the § 1981 claims, the district court held a bench trial on plaintiffs' Title VII claims and ruled in favor of Roadway, holding that Rivers and Davison failed to establish that their discharge from employment was based upon their race.

Rivers and Davison appeal the district court's dismissal of their § 1981 claims on two grounds. First, they argue that *Patterson* does not preclude this action, as it is not an action for discriminatory discharge, but rather an action based on retaliation for attempting to enforce the labor agreement, thus squarely falling under § 1981. Second, while this appeal was pending, the CRA of 1991 was enacted, explicitly contradicting the *Patterson* decision. Appellants argue that the CRA of 1991 should be applied retroactively to their § 1981 claims, thus invalidating the district court's decision. The case, they argue, should be remanded for a new determination under this new legislation.

## II

42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right

in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The *Patterson* court limited the scope of § 1981 actions by holding that § 1981 does not apply to discrimination in conditions of employment, but only prohibits discrimination in the formation of the employment contract or the right to enforce the contract. *Patterson*, 491 U.S. at 176, 109 S.Ct. at 2372. Thus, under *Patterson*, § 1981 "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 179, 109 S.Ct. at 2374.

While *Patterson* did not directly address the issue of whether § 1981 applied to discriminatory discharges, this court, along with a majority of other courts, has held that claims of discriminatory discharge are no longer cognizable under § 1981 because discharge does not involve contract formation. *See Prather v. Dayton Power & Light Co.*, 918 F.2d 1255 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991); *Hull v. Cuyahoga Valley Bd. of Educ.*, 926 F.2d 505 (6th Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). The plaintiffs, below and on appeal, argue that theirs were not discriminatory discharge claims, but rather, claims of retaliatory discharge where plaintiffs were punished for attempting to enforce their contract rights to be treated equally with white people. The district court rejected this claim as "bootstrapping" and held that this was solely a discriminatory discharge case.

■ Before deciding whether or not *Patterson* was correctly applied, we must first address whether the district court was correct in retroactively applying *Patterson* to the claims of Rivers and Davison. Our circuit has twice held that *Patterson* does apply retroactively to pending cases. In

*Prather v. Dayton Power & Light Co., supra,* we applied *Patterson* retroactively to a pending discriminatory discharge case based on three factors used to determine whether an exception mandating non-retroactivity exists, as discussed by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Under these factors, a decision will not be applied retroactively if, first, it

> establishes a new principle of law, either by overruling clear past precedent on which litigants have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

*Id.* at 106, 92 S.Ct. at 355 (citations omitted). The second retroactivity factor is the "prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Id.* at 107, 92 S.Ct. at 355. Finally, the third factor involves weighing "the inequity imposed by retroactive application" to avoid "injustice or hardship." *Id.* at 107, 92 S.Ct. at 355.

Weighing these factors, the *Prather* court held that applying *Patterson* retroactively would not "retard its operation," nor would it produce "substantial inequitable results" that might otherwise be avoided and concluded that applying *Patterson* would not unduly prejudice the plaintiff. *Prather*, 918 F.2d at 1258. This decision was reaffirmed in *Hull v. Cuyahoga Valley Bd. of Educ., supra.* The district court correctly found that *Patterson* applied retroactively to the pending § 1981 claims of Rivers and Davison.

### III

■ Appellants argue that, even if *Patterson* is applied retroactively to their case, their claims still survive *Patterson* and the district court wrongly dismissed the claim as a discriminatory discharge complaint not recognized under § 1981. We agree.

Appellants contend that *Patterson* only eliminates those claims of retaliation for exercising rights that are unrelated to the specific § 1981 right to "make and enforce contracts." But, they argue, *Patterson* does not eliminate a cause of action for

exercising rights that do relate to the enforcement of contract rights. Appellants maintain that they are not making discriminatory discharge claims, but rather are claiming retaliatory discharge that punished them for enforcing their contract right to receive notice equal to that received by whites.

Roadway counters that Rivers and Davison were not punished for enforcing their contract rights as

> The right to enforce contracts does not however extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights.

*Patterson*, 491 U.S. at 177–78, 109 S.Ct. at 2373.

However, the prohibited conduct of impairing the ability to enforce contract rights is exactly what appellants are complaining about here. Rivers and Davison were punished, they contend, for trying to utilize the established legal process for their grievances. The fact that Roadway allowed formal "access" to legal process does not imply that it could never be impairing the employee's "ability to enforce through legal process." An employer's intimidation and punishment conducted inside formal legal process may impair an employee's contract rights just as much as intimidation and punishment conducted outside formal legal process. *See Carter v. South Central Bell*, 912 F.2d 832, 840 (5th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991) (court emphasized that the alleged conduct must have impaired the plaintiff's ability to enforce contractual rights either through court or otherwise on the basis of race).

Appellants' claims are similar to those in *Von Zuckerstein v. Argonne National Lab.*, 760 F.Supp. 1310, 1318 (N.D.Ill.1991), where plaintiffs were permitted to proceed to trial on their § 1981 claims that "defendants specifically retaliated against them for pursuing (or intending to pursue) their *contract claims* in the internal grievance forum." *Id.* at 1318 (emphasis in original). We do not agree with appellee's argument that *Von Zuckerstein* is distinguishable be-

cause it involved an employer who impaired or impeded the plaintiffs from using the available legal process to enforce a specific anti-discrimination contract right. However, § 1981 speaks of the right to "enforce contracts," which includes any contract rights, not just anti-discrimination contract rights. The key here is that plaintiffs were impaired from enforcing contract rights, not the kind of contract right they were impaired from enforcing. Just because Rivers and Davison were allowed to use the available legal process does not mean the employer did not discriminate against them through retaliation for the very act of using that legal process. Retaliation is defined more broadly than mere access to legal process. *McKnight v. General Motors Corp.*, 908 F.2d 104, 111 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991), held that retaliation "is a common method of deterrence." We hold that appellants have articulated this essential element of § 1981, that their ability to enforce claimed contract rights was impaired because of their race.

Roadway argues that even if retaliatory discharge did occur, the plaintiffs never alleged retaliatory discharge in either their first or amended complaints. However, upon examination of the record, we find that sufficient allegations exist to form the basis of a retaliatory discharge claim. While appellants admit that their pre-*Patterson* complaint was not specifically structured as a "right to enforce a contract" claim as opposed to a "condition of employment" claim, the very basis of their complaint has always stemmed from retaliatory discharge. They allege, in their amended complaint, that "Rivers' [sic] and Davison's discharges were taken without just cause." More particularly Roadway scheduled a hearing for them for September 26, 1986, based on conduct for which a grievance committee had previously exonerated them with backpay." We find that the appellants' claims fall within the *Patterson* definition of permissible § 1981 actions, as the claims involve discrimination in the right to enforce a contract. We hold that the district court wrongly dismissed appellants'

§ 1981 claims and the case should be remanded for further proceedings on the § 1981 claims.

### IV

■ Our holding that the case should be remanded for further proceedings on appellants' § 1981 claims raises potential collateral-estoppel problems. The district court has already had a bench trial on the appellants' Title VII claims, finding that Rivers and Davison were not discharged from employment based on their race.

A similar situation existed in *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), where Lytle, a Black machinist for a subsidiary of Household Manufacturing, was dismissed for unexcused absences. Lytle filed a complaint with the EEOC, alleging that he had been treated differently than white employees who missed work. He then brought discriminatory discharge and retaliation claims under § 1981 and Title VII. The district court dismissed Lytle's § 1981 claims, concluding that Title VII provided the exclusive remedy for his racial discharge and retaliation claims. At a bench trial on the Title VII claims, the district court dismissed Lytle's discriminatory discharge claims pursuant to Rule 41(b), Fed. R.Civ.P., and granted defendants summary judgment on the retaliation claim.

The Fourth Circuit affirmed, ruling that the district court's findings with respect to Title VII claims collaterally estopped Lytle from litigating his § 1981 claims because the elements of a cause of action under § 1981 are identical to those under Title VII. *Lytle*, 494 U.S. at 549, 110 S.Ct. at 1335; *see also Washington v. Brown & Williamson Tobacco Corp.*, 756 F.Supp. 1547, 1555 (M.D.Ga.1991). The Supreme Court reversed, based on plaintiff's seventh amendment right to trial by jury in "suits at common law," noting that:

> When legal and equitable claims are joined in the same action, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact."

*Lytle*, 494 U.S. at 550, 110 S.Ct. at 1335 (citations omitted).

The Supreme Court distinguished the *Lytle* situation, where the equitable and legal claims were brought together, from the situation in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), where the Supreme Court held that "an equitable determination can have collateral-estoppel effect in *subsequent* legal action and that this estoppel does not violate the Seventh Amendment." *Lytle*, 494 U.S. at 550–51, 110 S.Ct. at 1336 (citing *Parklane Hosiery Co.*, 439 U.S. at 335, 99 S.Ct. at 653) (emphasis added).

■ We find that our situation falls squarely under the *Lytle* precedent and hold that collateral estoppel does not preclude relitigation of issues decided by the district court in its bench trial resolution of the equitable claims of Rivers and Davison under Title VII. As in *Lytle*, the purposes served by collateral estoppel do not justify applying the doctrine in this case. *Id.* 494 U.S. at 553, 110 S.Ct. at 1337. Collateral estoppel is designed to protect parties from multiple lawsuits and potentially inconsistent decisions, as well as to conserve judicial resources. *Ibid.* Although remanding for further proceedings certainly will expend greater judicial resources, such litigation is essential in preserving Rivers's and Davison's seventh amendment rights to a jury trial.

### V

■ While this case was pending on appeal, the United States Congress passed the Civil Rights Act of 1991. Appellants now argue that the district court should also be reversed in light of the 1991 Act, which amends § 1981 to change the result in *Patterson*. The 1991 Act states that:

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

Pub.L. 102–166, § 101(b); 42 U.S.C. § 1981(b).

Both this Circuit and the Eighth Circuit have addressed whether this act should

apply retroactively to § 1981 claims that were pending on appeal at the time of enactment. Both circuits have ruled that the CRA of 1991 does not apply retroactively. *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992); *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992).

Both *Vogel* and *Fray* examine the history of judicial treatment of retroactivity as applied to new legislation. Building upon both Roman civil law and English common law, up to 1969 it was a well-established principle in American jurisprudence that legislation must be applied only prospectively unless the legislature specifically decreed a retroactive application. *Fray,* 960 F.2d at 1374. However, in *Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), and in *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that a new statute must be retroactively applied to a case that was pending on appeal at enactment "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016.

Later, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Supreme Court reiterated the principle that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires the result." *Id.* at 208, 109 S.Ct. at 471. While the Supreme Court acknowledged this tension in the case law in *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the court did not have to resolve the issue, as congressional intent was found to be clear in that case.

Given these conflicting rules of construction, both the *Vogel* and *Fray* courts examined the language and legislative history of the CRA of 1991 and concluded that it should not be applied retroactively. For example, § 402 of Pub.L. 102–166 states that "[e]xcept as otherwise provided, this Act and the Amendments made by this Act

shall take effect upon enactment." While appellants argue that this indicates retroactivity, the *Vogel* court correctly noted that this language could mean that the Act applies to pending cases or it could mean it should be applied only to conduct occurring as of that date of enactment. *Vogel,* 959 F.2d at 597–98.

Both the *Vogel* and *Fray* courts also agree that the legislative history sheds little light on the matter, as Senators expressed conflicting views and no legislative committee reports exist explaining the bill. *Fray,* 960 F.2d at 1376–77. Appellants argue that retroactivity is implied because two sections are expressly made prospective. However, the *Fray* court notes that a bill that specifically changes the result in *Patterson* retroactively was vetoed by the President in 1990 and Congress failed to override the veto. The court concluded that:

> We think a rather clear picture emerges from this review of the Act and its legislative history. Proponents of retroactively overruling *Patterson* commanded a majority in both houses of Congress, but they could not override the President's veto of a 1990 bill that contained express retroactive provisions. Thus, proponents could do not better that send an ambiguous law to the judiciary. On the other hand, opponents of retroactivity who favored enactment of a prospective law (including the President) were also willing to hand this controversial issue to the judiciary by passing a law that contained no general resolution of the retroactivity issue. However, when a congressional majority could be marshalled, retroactivity opponents "hedged their bets" by expressly making specific provisions, such as § 109, prospective only.

*Fray,* 960 F.2d at 1377.

Given the ambiguous legislative history and language of the act, this court held in *Vogel* that

> *Bradley* should be read narrowly and should not be applied in contexts where "substantive rights and liabilities", broadly construed, would be affected. Clearly, retroactive application of the 1991 Act would affect "substantive

rights and liabilities" of the parties to this action.

*Vogel,* 959 F.2d at 598, citing *United States v. Murphy,* 937 F.2d 1032, 1037–38 (6th Cir.1991).

Appellants argue that *Vogel* is not determinative here since it deals with § 108, which is written differently from § 101, the section at issue here. They also argue that the *Fray* opinion, which does deal specifically with § 101, is wrong. However, appellants' arguments are not well taken on either count. Their distinction between § 101 and § 108 is immaterial, as both *Fray* and *Vogel* examined the retroactivity of the 1991 CRA as a whole, not in terms of specific sections, and both courts concluded that applying the Act retroactively would adversely affect substantive rights and liabilities.

We agree with the *Fray* and *Vogel* decisions and hold that the 1991 CRA does not apply retroactively. However, as we also find that the district court misapplied *Patterson,* the case can be reversed on those substantive grounds alone. We REVERSE and REMAND for further proceedings under § 1981, as we hold that *Patterson* does not exclude § 1981 claims based on retaliation for attempting to enforce contract rights.

SILER, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority opinion in full, except that which is listed in part III. It is my opinion that *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), does not permit a claim for retaliation pursuant to 42 U.S.C. § 1981 under the facts of this case. It may be that *Patterson* precludes *any* retaliatory claims under § 1981, but this court need not go that far.

First, I have much more of a problem than the majority in determining whether the plaintiffs ever alleged retaliatory discharge in either their first or amended complaints. However, for purposes of this analysis, I will assume that they did.

The majority relies upon the decisions in *McKnight v. General Motors Corp.,* 908 F.2d 104 (7th Cir.1990), *cert. denied,* ——

U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991); and *Von Zuckerstein v. Argonne Nat'l Lab.,* 760 F.Supp. 1310 (N.D.Ill.1991). However, *McKnight* did not hold that § 1981 allows a claim for retaliation. Instead, it *assumed* that it was so actionable "provided that the retaliation had a racial motivation." *McKnight,* 908 F.2d at 111. Then, the court went on to find that the plaintiff in that case *"might* be guilty of violating section 1981." *Id.* at 112 (emphasis added). It further stated that the question need not be pursued, "because General Motors did not interfere with *contractual* entitlements." *Id.*

Moreover, the court in *Von Zuckerstein* held at 1319 that the plaintiffs in that case would have to establish "that they sought to use the internal grievance procedure to vindicate their contractual right to be free from discrimination." That is unlike the present case, which apparently does not have an antidiscrimination provision in the collective bargaining agreement.

Instead, I would follow the decision in *Carter v. South Cent. Bell,* 912 F.2d 832, 840 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991), which held that § 1981 no longer extends to retaliatory termination. Although that case is somewhat different from this one, in that the plaintiff asserted that he was retaliated against because of filing a charge with the EEOC, which was a statutory right, not a contractual right, nevertheless, the court stated:

> Were we to hold that section 1981 still encompasses retaliatory discharge, we would be encouraging litigation to determine what the employer's subjective motive was when he fired the employee: was it to retaliate or "merely" to discriminate? This would be pointless. Both motives are equally invidious, and the employee suffers the same harm. Because section 1981 no longer covers retaliatory termination, all suits for discriminatory dismissal must be brought under Title VII.

*Id.* at 840–841. *Accord Overby v. Chevron USA, Inc.,* 884 F.2d 470, 472–473 (9th Cir. 1989), cited with approval in *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.,* 926 F.2d 505, 509 (6th Cir.),

498

*cert. denied,* —— U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991), for the proposition that retaliatory discharge claim is conduct not cognizable under § 1981.

Moreover, this court has, by unpublished decisions, followed that rule from *Carter.* Although they have no precedential value, see Sixth Cir.R. 24(c), they were cited by Roadway Express in its brief. I am not inclined to completely ignore opinions of other judges on this court, even if they are not binding. In *Christian v. Beacon Journal Publishing Co.,* No. 89–3822, 1990 WL 98844, 1990 U.S.App. LEXIS 12080 (6th Cir. July 17, 1990) [908 F.2d 972 (table)] (unreported), the court held that claims of retaliatory discharge may not be brought pursuant to § 1981 under *Patterson,* citing *Singleton v. Kellogg Co.,* No. 89–1073, 1989 WL 143565, 1989 U.S.App. LEXIS 17920 (6th Cir. Nov. 29, 1989) [890 F.2d 417 (table)] *(per curiam)* (unreported). *See also Bohanan v. United Parcel Serv.,* No. 90–3155, 1990 WL 177208, 1990 U.S.App. LEXIS 20154 (6th Cir. Nov. 14, 1990) [918 F.2d 178 (table)] (unreported) (Wellford, J., concurring). Therefore, I would affirm the district court in all respects.