1 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Stanley R. CRAIG, Plaintiff-Appellant,
v.
OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES, et al.,
Defendants-Appellees.
 No. 92-3383.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1993.
 
 Before: MERRITT, Chief Judge; KEITH and SUHRHEINRICH, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This is a civil rights case brought under 42 U.S.C. Sec. 1981, alleging racial discrimination in relation to a demolition contract. Plaintiff Craig appeals the district court's grant of summary judgment dismissing his complaint. He challenges the district court's holding that the Civil Rights Act of 1991 should not be applied retroactively, and its holding that Craig failed to raise any genuine issue of material fact precluding summary judgment. We affirm the district court's decision.
 
 I.
 
 2
 Stanley Craig is a black man and the owner and operator of a wrecking company. He bid on and was awarded a minority set-aside contract for demolition services and asbestos removal at Ohio State University's McCracken Power Plant. He alleges that the defendants violated Sec. 1981 by conspiring to induce him to enter into the contract on discriminatory terms under which performance of the contract was impossible, and of conspiring to refuse to enter into new agreements for additional work required for completion of the project but not anticipated by the parties.
 
 
 3
 In May 1984, Craig attended a pre-bid meeting held at the Power Plant. He and all other interested contractors received a set of plans and specifications detailing the plant. Prospective bidders were also shown a 30 square-inch cutout of one of the boilers. Craig alleges that the defendants possessed more detailed plans of the plant which were shown to white contractors working on other projects, but which were not shown to prospective bidders on the minority set-aside project. Craig also alleges that the cutout was not representative of the condition of other boilers in the plant.
 
 
 4
 Craig claims that the misleading information presented at the pre-bid meeting caused him to submit a bid which was much too low. This bid was accepted. When he began to work on the project, Craig realized that he had significantly underbid, and he requested "change orders" to allow additional work to be done for additional remuneration. According to Craig, all but one of his requests for change orders were denied, while similar requests from white contractors were granted.
 
 
 5
 Five defendants remain in the case. Fosdick & Himler is the architectural firm which was responsible for preparing the plans and specifications as well as the sample cutout provided to bidders on the minority set-aside project. Otto Himler is an architect for Fosdick & Himler. Walt Gaub is the State Architectural Office Field Representative who was responsible for approving Craig's asbestos removal plan and inspecting his work. Daniel Shield is the Deputy Director of the Division of Public Works who oversaw the entire McCracken Power Plant project. Burt Myers is a manager at the Power Plant. As proof of discriminatory intent, Craig asserts that all of these defendants treated him in a highly disrespectful manner. He cites several examples of racist remarks. He further asserts that the defendants refused to accept his asbestos removal plans, insisted that he remove all asbestos from the plant prior to demolition, confiscated his equipment, and eventually replaced him with a white contractor.
 
 II.
 
 6
 Craig's claims are limited to the formation of the initial contract and later negotiations for change orders by Patterson v. McClean Credit Union, 491 U.S. 164 (1989). In Patterson, the Supreme Court held that Sec. 1981 protection "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." Id. at 176. Craig's complaint seemed to be based upon the theory that defendants terminated the contract for discriminatory reasons--a claim not available under Patterson. When the district court asked the parties to file summary judgment motions addressing the applicability of Patterson, Craig changed his theory to allege discrimination in the formation of the initial contract and refusal to enter into change orders. Craig v. Ohio Dept. of Admin. Services, 790 F.Supp. 758, 759 (S.D.Ohio 1992).
 
 
 7
 While this case was pending below, Congress passed the Civil Rights Act of 1991, which extended Sec. 1981 protection to events occurring after the formation of a contract. After a detailed and careful analysis, the district court held that the Act should not be applied retroactively. Id. at 772. The Sixth Circuit Court of Appeals subsequently reached the same conclusion in Harvis v. Roadway Express, Inc., 973 F.2d 490, 497 (6th Cir.1992), cert. granted, 113 S.Ct. 1250 (Feb. 22, 1993). We therefore affirm the district court's ruling that the Civil Rights Act of 1991 should not be applied retroactively.
 
 III.
 
 8
 As to Craig's remaining claims under Sec. 1981, the district court granted summary judgment in favor of the defendants, holding that Craig had failed to produce specific evidence of discriminatory behavior. We review this decision de novo applying the same standard applied by the district court.
 
 
 9
 Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions, and affidavits do not raise a genuine issue of material fact for trial. Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party opposing a summary judgment motion has the burden of producing proof to support its legal claim. Celotex, 477 U.S. at 322-23.
 
 
 10
 In response to defendants' motion for summary judgment, Craig offered three affidavits. The first he prepared himself. The second was submitted by Robert Reight, a supervisor at the Power Plant who worked under defendant Bert Myers until 1986. The third affidavit was submitted by Lee Martin, an architect with the Division of Public Works during the time that defendant Daniel Shield oversaw the McCracken Power Plant demolition project. These three affidavits, taken together, do not provide sufficient evidence of discriminatory behavior by defendants to support a claim under Sec. 1981.
 
 A.
 
 11
 Craig's first claim is that the defendants conspired to induce him to enter into the demolition project on discriminatory terms. This claim is complicated by the fact that the contract was a minority set-aside which could only have gone to a minority contractor. Craig's theory is that the defendants provided prospective contractors with insufficient or misleading information at the pre-bid meeting for discriminatory reasons, in the hopes that the minority contractors would underbid. It is not enough for Craig to show that he was treated unfairly; he must show that he was treated unfairly because of his race. See Patterson, 491 U.S. at 186.
 
 
 12
 Reight's affidavit states that at the time of the pre-bid meeting there were detailed plans at the McCracken Power Plant depicting the location of asbestos in the boilers. At an unspecified time an unidentified person instructed Reight and his staff to show these plans to certain contractors "who were not minority-controlled contractors." Reight was never told to show the plans to Craig. There is no allegation that Reight was told to show the plans only to non-minority contractors. Reight states that defendant Burt Myers ordered the detailed plans destroyed for no apparent reason.
 
 
 13
 The plans Craig saw were prepared by the architectural firm of Fosdick & Himler, and did not contain detailed information about the location of asbestos in the boilers. Robert Staley, an employee of Fosdick & Himler, presented an uncontradicted affidavit stating that he had searched the Ohio State University archives for detailed boiler plans and was unable to find any for inclusion in the minority set-aside bid package.
 
 
 14
 Evidence that there were detailed plans at the Power Plant which were shown to some non-minority contractors, and which were later destroyed, is insufficient to raise an issue of fact about whether the defendants presented Craig with incomplete plans for discriminatory reasons. At most the evidence raises an inference that officials at the Power Plant may have withheld detailed plans from the architectural firm preparing the pre-bid package in the hopes that contractors would underbid. That the plans were shown to some non-minority contractors under unknown circumstances does not support the further inference that the plans were withheld for discriminatory reasons. The Supreme Court has stated that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252.
 
 
 15
 Craig's allegations of disrespectful and racist behavior by the defendants add little. Craig states in his affidavit that after he was awarded the contract he "was treated in a highly disrespectful manner by each of the individual defendants." The only defendants allegedly involved in the conspiracy to induce Craig to underbid are Burt Myers, who knew of the detailed plans, and employees of Fosdick & Himler, the firm that prepared the prebid package. At the time Craig's contract was terminated, Reight states that Myers, using racial slurs, instructed Reight not to let him back in the McCracken Power Plant. On another occasion when a black contractor was fired, Myers, again using racial epithets, told Reight to "get rid" of him. Craig also alleges that Otto Himler, an architect at Fosdick & Himler, called Craig " 'boy' in a deprecating and insulting manner." While these statements are reprehensible, they shed little light on the reason that the pre-bid package contained incomplete or misleading information. We agree with the district court that Craig has failed to present evidence of discriminatory conduct in the formation of the demolition contract sufficient to allow a reasonable jury to find in his favor.
 
 B.
 
 16
 Craig's second claim is that the defendants' refusal to enter into change orders to allow additional work to be done for additional remuneration was discriminatory. This claim relates primarily to defendant Daniel Shields, the Deputy Director of the Division of Public Works who was responsible for approving and denying change orders. Craig states that Shields denied all change order requests excepting only one "insignificant change order approval which was unrelated to compensating me for the additional work required but not originally anticipated on this project."
 
 
 17
 On this second claim, Craig again offers insufficient proof of discriminatory intent. He makes the bare allegation that "change orders had been granted to several white contractors on the project relating to situations similar as to those with which I was faced." Vague conclusory allegations are not enough to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir.1990); Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1564 (Fed.Cir.1987). Craig has the burden of producing, in support of his claim, specific evidence that could be offered at trial. Fed.R.Civ.P. 56(e); Liberty Lobby, 477 U.S. at 248.
 
 
 18
 The only other evidence against Shields is the affidavit of Lee Martin, the State Architect with the Division of Public Works. Martin states that Shields has an "agency-wide reputation for racial prejudice and vindictiveness," and that to Martin's knowledge all of the contractors Shields has terminated have been minority contractors. These claims are vague and unspecific and do not raise an issue of fact regarding Craig's claim that Shields refused his change order requests because of Craig's race. Summary judgment for the defendants is therefore appropriate.
 
 IV.
 
 19
 For the foregoing reasons we AFFIRM the district court's ruling that the Civil Rights Act of 1991 should not be retroactively applied, and the district court's grant of summary judgment in favor of the defendants.